[No. A041237. First Dist., Div. Two. Apr. 14, 1989]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES KEVIN THURMAN, Defendant and Appellant.

**COUNSEL**

Gordon S. Brownell for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Gloria F. De Hart and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BENSON, J.**—Appellant James Kevin Thurman pled guilty to one count of possession of cocaine for sale. (Health & Saf. Code, § 11351.)[1] He appeals the judgment contending the court erroneously denied his Penal Code section 1538.5 motion to suppress. We affirm the judgment.

We summarize the evidence the court considered in denying appellant's motion to suppress.[2] On October 9, 1987, officers for the City of Vallejo served a search warrant at the residence of 949 B Grant Street. The warrant authorized a search of the premises for drugs, narcotic paraphernalia, and papers indicating the identity of a person who participated in a narcotics transaction on October 7, 1987. The warrant did not authorize a search of appellant. Four officers, led by Officer Phillip L. Silva, arrived at the premises shortly after 6 p.m. Officer Silva reached the open front door and advised, "Police, search warrant." He heard what sounded like footsteps running down the hallway. Approximately 15 seconds later, the officers entered the premises with guns drawn. Officer Silva went to the back bedroom. He did not see appellant when he entered the premises.

---

[1] All statutory references are to the Health and Safety Code unless otherwise indicated.

[2] The suppression motion was based on evidence presented at the preliminary hearing.

Jeff Azuar, an officer with nearly 10 years' experience, followed Officer Silva into the apartment but remained in the front room area. There, he saw two females and appellant. Appellant was sitting silently and passively on the sofa; he did not threaten the officer. Officer Azuar approached appellant because "he was sitting there with nobody with him." Aware that the search warrant did not authorize a search of appellant for contraband, he nevertheless ordered appellant to stand and "immediately patted him down for weapons for safety." Officer Azuar felt a large bulge in appellant's jacket pocket. It felt like it could have been a gun. Believing it was a weapon, he stuck his hand inside appellant's jacket pocket. He testified that "I wouldn't have stuck my hand in there if I didn't believe so." He then squeezed the object and realized it was not a weapon. Instead, he felt what he thought were "pieces of rock or rock cocaine in a baggie." While he had never seen rock cocaine this large, in his past experience he had grasped rock cocaine on 10-15 occasions, had patted down approximately 50 people for rock cocaine, and knew that the objects "felt like rock." He removed the plastic bag containing rock cocaine and arrested appellant. The exhibit list identifies people's exhibit 1A as a "baggie with 12 large rocks of cocaine."

### Discussion

Our standard of review on appeal from the denial of a motion to suppress is well established. We defer to the trial court's factual findings where supported by substantial evidence, but we must exercise our independent judgment to determine whether, on the facts found, the search and seizure was reasonable under the Fourth Amendment standards of reasonableness. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

### 1. The "Terry" patdown search

Appellant first contends that Officer Azuar subjected him to an unlawful patdown search in violation of his Fourth Amendment rights. Appellant concedes the right of a police officer to conduct a patdown search for weapons in the course of a lawful detention and does not contest the propriety of his detention at the time the officers executed the search warrant. Nevertheless, relying on *Ybarra* v. *Illinois* (1979) 444 U.S. 85 [62 L.Ed.2d 238, 100 S.Ct. 338], he argues that the patdown here was prohibited because he was not a resident of the premises where the warrant was served and was not behaving in a threatening manner. Alternatively, he contends that the officer had no reason to believe that appellant was "an armed and dangerous individual" and, therefore, under *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], the pat search was unlawful.

In *Terry* v. *Ohio, supra,* 392 U.S. 1, the United States Supreme Court directed its attention to the ". . . quite narrow question . . . whether it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons unless there is probable cause for an arrest." (*Id.* at p. 15 [20 L.Ed.2d at p. 902].) Acknowledging the sacred and carefully guarded Fourth Amendment protections afforded the People, Chief Justice Warren, expressing substantially the views of eight members of the *Terry* court, continued with the analysis of the issue and wrote: "We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.

"In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." (392 U.S. at pp. 23-24 [20 L.Ed.2d at p. 907-908], fn. omitted.)

The "long tradition of armed violence" by the American criminal, to which the Chief Justice alluded, has not diminished since *Terry* v. *Ohio*. Indeed, illicit drug trafficking, now of epidemic proportion, has brought new dimension to this deplorable tradition. Rare is the day which passes without fresh reports of drug related homicides, open street warfare between armed gangs over disputed "drug turf," and police seizures of illicit drug and weapon caches in warranted searches of private residences and other locales. It is well recognized that ". . . the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence. . . ." (*Michigan* v. *Summers* (1981) 452 U.S. 692, 702 [69 L.Ed.2d 340, 349, 101 S.Ct. 2587].) Moreover, as Justice Rehnquist observed in his dissenting opinion in *Ybarra* v. *Illinois, supra,* 444 U.S. 85, 106 [62 L.Ed.2d 238, 255], citing *United States* v. *Oates* (2d Cir. 1977) 560 F.2d 45, 62: "In the narcotics business, 'firearms are as much "tools of the trade" as are most commonly recognized articles of narcotic paraphernalia.'"

■ Finding that the pat search of Terry was not unreasonable and that the revolver which had been seized was properly admitted in evidence against him, the *Terry* Court concluded: ". . . that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; *the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.* [Citations.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. [Citation.]" (*Terry* v. *Ohio, supra,* 392 U.S. 1, 27 [20 L.Ed.2d at p. 909], fn. omitted, italics added.)

■ We have no hesitation whatever in holding that Officer Azuar acted reasonably and prudently in conducting the pat search of appellant in the circumstances. Here, a neutral and detached magistrate had judicially approved a warranted search for evidence of drug trafficking at the private residence where appellant was found. The officers whose duty required them to execute the warranted search were thus well aware they were engaged in an undertaking fraught with the potential for sudden violence. They were necessarily cognizant of the very real threat that the occupants of the residence were within an environment where weapons are readily accessible and often hidden, nor could they discount the possibility that one or more of the individuals found inside were personally armed.

In this atmosphere Officer Azuar, a 10-year veteran of police work, came upon appellant, at close range, quietly seated on a sofa. That appellant's posture, at that moment, was nonthreatening does not in any measure diminish the potential for sudden armed violence that his presence within the residence suggested. To require an officer to await an overt act of hostility, as appellant suggests, before attempting to neutralize the threat of physical harm which accompanies an occupant's presence in a probable drug trafficking residential locale, would be utter folly.

■ The *Terry* court observed that there is " 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' " (*Terry* v. *Ohio, supra,* 392 U.S. at p. 21 [20 L.Ed.2d at p. 905]; also see *Michigan* v. *Long* (1983) 463 U.S. 1032, 1045 [77 L.Ed.2d 1201, 1217, 103 S.Ct. 3469].) The

brief, relatively private intrusion upon appellant's personal security pales in significance when balanced against the officer's need to protect himself and others from the documented potential for violence inherent in a judicially sanctioned search for narcotics in a private residence. The risk of approaching an occupant of a private residence which is the probable site of drug trafficking corresponds to, if not exceeds, ". . . the inordinate risk confronting an officer as he approaches a person seated in an automobile." (*Pennsylvania* v. *Mimms* (1977) 434 U.S. 106, 110 [54 L.Ed.2d 331, 336, 98 S.Ct. 330].)

"In evaluating the validity of an officer's investigative or protective conduct under *Terry,* the 'touchstone of our analysis . . . is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security."'" (*Pennsylvania* v. *Mimms, supra,* 434 U.S. at pp. 108-109 [54 L.Ed.2d at p. 335].) ██ "[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." (*Elkins* v. *United States* (1960) 364 U.S. 206, 222 [4 L.Ed.2d 1669, 1680, 80 S.Ct. 1437].) ██ We hold that where police officers are called upon to execute a warranted search for narcotics within a private residence they have the lawful right to conduct a limited *Terry* patdown search for weapons upon the occupants present while the search is in progress. Such protective action in the circumstances defined is, in our judgment, manifestly reasonable.

Appellant's reliance on *Ybarra* v. *Illinois, supra,* 444 U.S. 85, is misplaced because of *Ybarra*'s patent factual dissimilarity. In *Ybarra,* the pat search was conducted on nine to thirteen patrons of a *public* tavern. The court regarded this as a "generalized 'cursory search for weapons.'" (*Id.* at pp. 93-94 [62 L.Ed.2d at p. 247]) and, citing *Sibron* v. *New York* (1967) 392 U.S. 40, 62-63 [20 L.Ed.2d 917, 934-935, 88 S.Ct. 1889], observed that ". . . a person's mere propinquity to others independently suspected of criminal activity does not, *without more,* give rise to probable cause to search that person." (*Ybarra, supra,* at p. 91 [62 L.Ed.2d at p. 245], italics added.) Unlike a business open to the general public, a private residence does not attract casual visitors off the street. When the private residence has been judicially determined as the probable site of narcotic transactions, the occupants are very likely to be involved in drug trafficking in one form or another. Moreover, because of the private nature of the surroundings and the recognized propensity of persons "engaged in selling narcotics [to] frequently carry firearms to protect themselves from would-be robbers," (*People* v. *Lee* (1987) 194 Cal.App.3d 975, 983 [240 Cal.Rptr. 32]) the likelihood that the occupants are armed or have ready accessibility to hidden weapons

is conspicuously greater than in cases where, as in *Ybarra,* the public freely enters premises where legal business is transacted.

Appellant's reliance on *Santos* v. *Superior Court* (1984) 154 Cal.App.3d 1178 [202 Cal.Rptr. 6] is also misdirected for in *Santos,* unlike the case before us, the patdown search conducted by the police officer was not based on the officer's belief that the defendant was armed and dangerous. There, the officer was "not sure what the suspicious activity was, but he was 'trying to find out' by pat searching petitioner." (*Id.* at p. 1185.)

### 2. *Extending the pat search beyond the outer clothing*

■ Appellant argues alternatively that even if the pat search was justified (and we have found that it was), it nevertheless exceeded the bounds of a lawful *Terry* search. He also argues that Officer Azuar had no legal right to remove the object he felt in appellant's pocket since he had no "specific and articulable facts" suggesting that the object he felt in appellant's pocket was a weapon. Appellant is wrong on both counts.

Our analysis begins with reference to *Michigan* v. *Long, supra,* 463 U.S. 1032, where the Supreme Court, extending a protective *Terry* search to those areas of an automobile in which a weapon may be placed or hidden, commented: "If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances. [Citations.]" (*Id.* at p. 1050 [77 L.Ed.2d at p. 1220].)

The record before us does not support the conclusion suggested by appellant that Officer Azuar was engaging in a random search for contraband. The record is uncontradicted that the patdown for weapons was motivated by reasons of safety. During the process a large bulge was detected in appellant's jacket pocket. Officer Azuar, concerned that the object was a weapon, placed his hand inside the jacket pocket. This action was a reasonable and limited component of the pat search.

We hold that where an outside clothing pat search reveals the presence of an object of a size and density that reasonably suggests the object might be a weapon, the searching officer is entitled to continue the search to the inner garments where the object is located in order to determine whether the object is in fact a weapon. Weapon verification is essential if safety is to be

preserved and a potentially volatile situation neutralized. We cannot impose a condition of certainty that the object is a weapon before allowing an officer to continue the pat search to the inner clothing site where the object is located. To do so would frustrate the objective of the pat search. We can impose a condition that an officer's belief that the object is a weapon be reasonably grounded and not a mere subterfuge for a random search. That condition has been met in the case before us.

■ Having determined that the pat search for a weapon into the interior of appellant's jacket pocket was reasonable and justifiable, we must now respond to appellant's argument that Officer Azuar had no legal right to remove the object since he had no "specific and articulable facts" that the object was a weapon. It is correct that when Officer Azuar squeezed the object in appellant's jacket pocket he realized it was not a weapon. However, simultaneous with the verification that the object was not a weapon occurred the realization that the objects were pieces of rock cocaine contained in a baggie. This determination was not based on suspicion or surmise but rather on the officer's experience of having grasped rock cocaine on 10 to 15 prior occasions.

The situation before us is not unlike that presented to our colleagues in Division Four of this court in *People* v. *Lee, supra,* 194 Cal.App.3d 975. There, Justice Poché, writing for a unanimous court, "reject[ed] the notion that an officer who reliably detects contraband during a properly conducted *Terry* search cannot seize it." (*Id*. at p. 983.) ■ The *Lee* court observed: "Knowledge gained by a police officer through the sense of touch is as meaningful as knowledge gained through other senses. [Citation.] 'Reasonable grounds for believing a package contains contraband may be adequately afforded by its shape, its design, and the manner in which it is carried.' [Citations.] ■ The present situation presents the tactile equivalent of cases where an officer permissibly and reliably detects contraband through sight or smell and thereupon arrests the defendant. [Citations.]" (*Id*. at p. 984.)

Thus, Officer Azuar's tactile perceptions developed through his years of experience as a police officer and particularly his multiple exposures to rock cocaine, furnished probable cause to remove the baggie and its contents and arrest the appellant. As in *Michigan* v. *Long, supra,* 463 U.S. at page 1050 [77 L.Ed.2d at page 1220], ". . . he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances."

The court properly denied appellant's motion to suppress. The judgment is affirmed.

Smith, Acting P. J., and Peterson, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 13, 1989.