**STATE**

v.

**Raynardo ALAMONT.**

**No. 89–266–C.A.**

Supreme Court of Rhode Island.

July 12, 1990.

James E. O'Neil, Atty. Gen. Jane McSoley, Sp. Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

OPINION

FAY, Chief Justice.

This matter comes before the Supreme Court on the state's appeal from a Superior Court order granting the defendant's motion to suppress evidence. The relevant facts are as follows.

On May 24, 1986, at approximately 6:30 a.m. the Providence police executed a search warrant upon the premises of 21 Salmon Street, apartment No. 2B. The search warrant, obtained on the basis of

information received from an informant and the results of a prior controlled-drug purchase at the named premises, listed "cocaine and heroin" as the objects of the warrant and "Vivian, a Spanish female" as the keeper of the premises.

Upon gaining entrance to the apartment, the police encountered two females. These women were placed in custody and seated on a sofa in the living room. Detective Timothy Patterson observed the women stuff something under a cushion of the couch. He retrieved bags containing a substance that he believed to be heroin.

Detective Patterson then moved to the kitchen where another officer had two males standing with their hands on the sink. Detective Patterson proceeded to pat down the individuals for guns or other weapons. While conducting the pat-down search of the first subject, Detective Patterson felt what he believed to be vials of crack cocaine in the individual's pocket. He recognized the vials as those used in the drug trade to package crack because he had come into contact with similar vials on "hundreds" of occasions. He seized these vials. He then conducted a pat-down search of defendant and felt an object in the pocket of his pants that he believed to be a vial of crack. He seized the vial and arrested defendant.

Charged with possession of a controlled substance, defendant moved to suppress the evidence. The trial justice ruled that the vial of crack was inadmissible because the pat-down search contravened the Fourth Amendment's prohibition against unreasonable searches and seizures.[1] Relying upon *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the trial justice found that the authorities lacked probable cause to search defendant. We disagree.

In *Ybarra* the United States Supreme Court considered the appeal of a defendant indicted for possession of heroin discovered

as the result of a pat-down search that took place at a tavern where he was a patron. Police entered the Aurora Tap Tavern pursuant to a warrant authorizing them to search the premises and the bartender for evidence of narcotics; they announced their purpose and advised all those present that they were going to conduct a "cursory search for weapons." The officer who searched the nine to thirteen customers present in the tavern felt what he described as "a cigarette pack with objects in it" in his first pat-down search of Ybarra. The officer did not then remove this pack from Ybarra's pocket but, after patting down the other customers, returned to Ybarra, frisked him again, retrieved the cigarette pack from his pants pocket, and discovered inside it six tinfoil packets containing heroin. The trial court denied Ybarra's pretrial motion to suppress, and he was subsequently convicted of possession.

The Supreme Court reversed the conviction, holding that the searches of Ybarra and the seizure of what was in his pocket contravened the Fourth and Fourteenth Amendments. The Court stated that the search warrant did not give the authorities probable cause to believe that any person found in the tavern, aside from the bartender, would be violating the law. Furthermore probable cause was still absent when the police executed the warrant; the officers who entered the bar did not recognize the defendant and had no reason to believe that he had committed, was committing, or was about to commit any offense. Although they possessed a valid warrant based on probable cause to search the tavern, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra*, 444 U.S. at 91, 100 S.Ct. at 342, 62 L.Ed.2d at 245.

The Court also rejected the State of Illinois's argument that despite lack of probable cause to search Ybarra, the seizure of

---

**1.** The Fourth Amendment to the United States Constitution states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

contraband was justified as a product of a search for weapons under the doctrine of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry* the Supreme Court addressed the question "whether it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons unless there is probable cause for an arrest." *Id.* at 15, 88 S.Ct. at 1877, 20 L.Ed.2d at 902. The Court concluded that

"there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. * * * And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

Applying the *Terry* doctrine to the facts of the case before it, the *Ybarra* Court held that

"[t]he initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a pat-down of a person for weapons. *Adams v. Williams*, 407 U.S. 143, 146 [92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)]; *Ter-*

*ry v. Ohio, supra*, [392 U.S.] at 21–24, 27 [88 S.Ct. at 1879–1881, 1883]. When the police entered the Aurora Tap Tavern on March 1, 1976, the lighting was sufficient for them to observe the customers. Upon seeing Ybarra, they neither recognized him as a person with a criminal history nor had any particular reason to believe that he might be inclined to assault them. Moreover, as Police Agent Johnson later testified, Ybarra, whose hands were empty, gave no indication of possessing a weapon, made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that was not threatening. At the suppression hearing, the most Agent Johnson could point to was that Ybarra was wearing a ¾-length lumber jacket, clothing which the State admits could be expected on almost any tavern patron in Illinois in early March. In short, the State is unable to articulate any specific fact that would have justified a police officer at the scene in even suspecting that Ybarra was armed and dangerous." *Ybarra*, 444 U.S. at 92–93, 100 S.Ct. at 343, 62 L.Ed.2d at 246–47.

The trial justice felt that the Supreme Court's holding in *Ybarra* required him to grant defendant's motion to suppress; however, owing to its patent factual dissimilarity, we do not find *Ybarra* to be controlling here. Rather we are persuaded by the reasoning of the California Court of Appeal, First District, which distinguished *Ybarra* in a case remarkably similar to the one before us today. *People v. Thurman*, 209 Cal.App.3d 817, 257 Cal.Rptr. 517 (1989).[2] The court wrote:

"Unlike a business open to the general public, a private residence does not attract casual visitors off the street. When the private residence has been ju-

---

**2.** *People v. Thurman*, 209 Cal.App.3d 817, 257 Cal.Rptr. 517 (1989) involved the search of a private dwelling pursuant to a warrant. The warrant authorized a search of the premises for drugs, narcotic paraphernalia, and papers indicating the identity of a person who participated in a narcotics transaction on October 7, 1987, but did not authorize a search of the defendant. Upon entering the dwelling, the police observed the defendant sitting silently and passively on

the sofa; he did not threaten the officer. Aware that the search warrant did not authorize a search of the defendant, the police nevertheless ordered the defendant to stand and immediately patted him down for weapons. A plastic bag containing rock cocaine was discovered as a result of this search. The trial court denied the defendant's pretrial motion to suppress, and the Court of Appeal affirmed.

dicially determined as the probable site of narcotic transactions, the occupants are very likely to be involved in drug trafficking in one form or another. Moreover, because of the private nature of the surroundings and the recognized propensity of persons 'engaged in selling narcotics [to] frequently carry firearms to protect themselves from would-be robbers,' (*People v. Lee* (1987) 194 Cal. App.3d 975, 983, 240 Cal.Rptr. 32) the likelihood that the occupants are armed or have ready accessibility to hidden weapons is conspicuously greater than in cases where, as in *Ybarra,* the public freely enters premises where legal business is transacted." *Id.* at 824–25, 257 Cal. Rptr. at 520–21.

The court concluded that because of the inherent dangerousness of the situation, police officers who are called upon to execute a warranted search for narcotics within a private residence have a lawful right to conduct a limited pat-down search for weapons upon any occupants present while the search is in progress. We find no reason to hold differently in this case.

The circumstances of this case clearly justified Detective Patterson in his belief that defendant may have been armed and dangerous. The search warrant authorized a search for narcotics at the private residence where defendant was found. As Justice Rehnquist noted in his dissenting opinion in *Ybarra,* "In the narcotics business, 'firearms are as much "tools of the trade" as are most commonly recognized articles of narcotics paraphernalia.'" *Ybarra,* 444 U. S. at 106, 100 S.Ct. at 350, 62 L.Ed.2d at 255 (quoting *United States v. Oates,* 560 F.2d 45, 62 (2nd Cir.1977)). Thus the officers executing the warrant were aware that they were engaged in an undertaking fraught with the potential for sudden violence. They had reason to be concerned for their safety. The fact that defendant was under the control of another officer at the time Detective Patterson patted him down does not render unreasonable

Patterson's belief that defendant could injure him. *See Michigan v. Long,* 463 U.S. 1032, 1051, 103 S.Ct. 3469, 3482, 77 L.Ed.2d 1201, 1221 (1983).

In *Terry* the Court noted that there is "no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails." *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879, 20 L.Ed.2d at 905 (quoting *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)). It is clear that the brief intrusion upon defendant's personal security "pales in significance when balanced against the officer's need to protect himself and others from the documented potential for violence inherent in a judicially sanctioned search for narcotics in a private residence." *Thurman,* 209 Cal.App.3d at 824, 257 Cal. Rptr. at 520.

Having established that the pat-down search of the defendant was reasonable under the circumstances, we now turn to the reasonableness of the seizure of the vial of crack from the pocket of the defendant's pants. During the legal pat-down search, Detective Patterson felt a hard object in the defendant's pocket that he believed to be a vial of crack. Having handled similar vials on "hundreds" of occasions, he recognized the vial by its distinctive size and shape.[3] His suspicion was further enhanced by the seizure of similar vials from the other male occupant of the premises only seconds earlier. This being the case, we believe that Detective Patterson had probable cause to subject the defendant to a more extensive search. "Given probable cause to believe that a person possesses illegal drugs, the police need no warrant to conduct a full body search. They need only arrest that person and conduct the search incident to that arrest." *Ybarra,* 444 U.S. at 105, 100 S.Ct. at 350, 62 L.Ed.2d at 255 (Rehnquist, J., dissenting) (citing *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)). "It should not matter, of

**3.** Detective Patterson testified that crack is generally packaged in one-inch cylindrical plastic vials.

 

course, whether the arrest precedes the search or vice versa." *Id.* (citing *United States v. Gorman,* 355 F.2d 151, 159 (2nd Cir.1965), *cert. denied,* 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027 (1966).

For the foregoing reasons the state's appeal is sustained, the trial justice's decision granting the defendant's motion to suppress is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.