COURT OF APPEALS OF VIRGINIA


Present: Judges Bray, Frank and Agee
Argued at Chesapeake, Virginia


PHILLIP JEROME MURPHY
                                            OPINION BY
v.    Record No. 2626-00-1         JUDGE G. STEVEN AGEE
                                       FEBRUARY 26, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
                William H. Hodges, Judge Designate

          S. Jane Chittom, Appellate Defender (Public
          Defender Commission, on briefs), for
          appellant.

          Eugene Murphy, Assistant Attorney General
          (Randolph A. Beales, Attorney General, on
          brief), for appellee.


     Phillip Jerome Murphy ("Murphy" or "the appellant") was

convicted in a Southampton County Circuit Court bench trial of

possession of heroin with intent to distribute, second or

subsequent offense, in violation of Code § 18.2-250(C), and

possession of cocaine with intent to distribute, second offense,

in violation of Code § 18.2-248(C).  The trial court denied the

appellant's pretrial motion to suppress evidence seized after a

cautionary frisk of his person.  On appeal, he argues that the

weapons frisk was unlawful and any evidence obtained as a result

of the frisk should have been suppressed.  In the alternative, he

argues that if the frisk was lawful, the police exceeded the scope

of a pat-down search for weapons by removing an object from his

pocket and that the "plain feel" doctrine does not apply.  Murphy also contends the police had no lawful basis to remove certain objects from his mouth.  We disagree and affirm the judgment of the trial court.

## I.  Background

On appeal, the appellant bears the burden to establish that denying the motion to suppress was reversible error.  The issues of whether a seizure occurred and whether a frisk for weapons was constitutionally valid involve mixed questions of law and fact, which we review de novo on appeal.  See McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).  "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them . . . ."  Id. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699).  We view the evidence in the light most favorable to the prevailing party at trial, the Commonwealth in this instance.  See Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994).

Viewed in this light, the evidence at the suppression hearing established that on September 21, 1999, Officer Harvey of the Franklin Police Department, along with other officers, executed a search warrant for the "entire residence at 410 Hall Street," for marijuana, cocaine, heroin, firearms and a "black

male named Eric Smith."  The search warrant did not authorize the search of any other individuals found on the premises.

Upon entry to the residence, police found five persons present on the premises.  Officer Harvey ordered Murphy, then seated on a couch, to lie on the floor with his arms stretched away from his body.  Murphy complied and was subsequently handcuffed, "to ensure that he couldn't reach anything."  "After the cuffing had occurred a pat-down for [the] safety of [the officers] in the area for weapons was conducted" pursuant to Franklin Police Department practice on the execution of search warrants.  Neither Officer Harvey nor any of the other officers knew Murphy, a black male, or Eric Smith.

As Officer Harvey performed the frisk, he detected a bulge in Murphy's left front pants pocket.  He knew "it to be a plastic baggy[,] which is a common way through my training and experience as a law officer that marijuana is packaged."  The officer testified that he believed the bulge to be marijuana, so he retrieved the item.  It appeared on inspection to be marijuana, and Murphy was placed under arrest.

After Murphy was arrested, another officer, Sergeant Welch, asked Murphy a question.  Murphy replied in a muffled voice. The officers then noticed the appellant "was speaking in an unusual manner as if he had his mouth full of something."  The officers physically forced Murphy to spit the objects out of his mouth.  The officers recovered a folded one-dollar bill, seven

blue envelope-type packages and ten white rock-like substances.
Analysis of the substances disclosed 8.02 grams of cocaine and
0.308 grams of heroin.

## II.  Analysis

On appeal, Murphy contends Officer Harvey was not entitled
to detain him or subject him to a frisk and, therefore, the
marijuana evidence was seized in violation of the Fourth
Amendment and should have been suppressed.  In the alternative,
he avers the officer exceeded the scope of a weapons frisk by
seizing an object that was clearly not a weapon.  For the
following reasons, we disagree with Murphy's contentions and
hold he was lawfully detained and frisked and that the
subsequent seizure of contraband was also lawful.

### A.  The Detention

The police officers lawfully detained Murphy, an occupant
of a private residence being searched for narcotics and firearms
pursuant to a valid search warrant.[1]  It is well established that
"a warrant to search for contraband founded on probable cause
implicitly carries with it the limited authority to detain the
occupants of the premises while a proper search is conducted."
Michigan v. Summers, 452 U.S. 692, 705 (1981) (footnotes
omitted).  Among the "legitimate law enforcement interest[s]" in
detaining the occupants

_____

[1] Murphy raised no challenge to the validity of the search
warrant.

- 4 -

is the interest in minimizing the risk of
harm to the officers . . . . [T]he execution
of a warrant to search for narcotics is the
kind of transaction that may give rise to
sudden violence or frantic efforts to
conceal or destroy evidence. The risk of
harm to both the police and the occupants is
minimized if the officers routinely exercise
unquestioned command of the situation.

Id. at 702-03 (citation and footnote omitted). Once Murphy was

detained, Officer Harvey was entitled to take reasonable steps

under the prevailing circumstances to protect the safety of the

officers and everyone else in the house.[2] See generally Welshman

v. Commonwealth, 28 Va. App. 20, 502 S.E.2d 122 (1998) (en

banc).

### B. The Frisk

Murphy was subjected to a frisk for weapons in the interest

of the officers' safety. Whether this action was lawful, in the

context of executing a search warrant in a private residence,

where the search warrant does not name the individual frisked,

is a question of first impression in the Commonwealth. Upon

review, we hold that the protective frisk was lawful.

---

[2] In determining what measures were appropriate, the officers were entitled to consider the fact that they were in a private residence in which a magistrate had found probable cause to believe was a site for narcotics distribution. See generally Welshman v. Commonwealth, 28 Va. App. 20, 34, 502 S.E.2d 122, 129 (1998) (en banc). Appropriate actions would include, among other things, having Murphy and the other occupants lie prone and extend their arms from their bodies so their hands would be in plain view. See id. at 35, 502 S.E.2d at 129. It was also permissible to keep the occupants under guard. See Summers, 452 U.S. 692.

1.  Application of the Fourth Amendment

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

See also Va. Const. art. 1, § 10. In general terms, the Fourth Amendment requires a seizure or subsequent search of a person to be based on probable cause. See Dunaway v. New York, 442 U.S. 200 (1979). Murphy was not named in the search warrant, nor was there a direction in the warrant to search unnamed individuals found on the premises. Murphy's presence on the premises when the search warrant was executed would not, alone, provide probable cause to justify a full search of his person. See Ybarra v. Illinois, 444 U.S. 85 (1979); Hayes v. Commonwealth, 29 Va. App. 647, 514 S.E.2d 357 (1999).

However, the protective frisk of Murphy was not a full search. Such a frisk is permissible under the Fourth Amendment's first prong, the "general proscription against unreasonable searches and seizures." Terry v. Ohio, 392 U.S. 1, 20 (1968) (emphasis added). The Fourth Amendment does not proscribe reasonable searches and seizures. See generally Michigan v. Long, 463 U.S. 1032 (1983); Terry, 392 U.S. 1;

- 6 -

Hatcher v. Commonwealth, 14 Va. App. 487, 419 S.E.2d 256, 258-59 (1992).

2. Reasonableness of a Protective Frisk

In assessing reasonableness, the Supreme Court of the United States has said:

> it is necessary "first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen," for there is "no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails." Camara v. Municipal Court, 387 U.S. 523, 534-535, 536-537 (1967). And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.

Terry, 392 U.S. at 20-21 (footnote omitted).

Applying these principles to the case at bar, we recognize the governmental interest involved as being the safety of law enforcement officers who are assigned an inherently dangerous task: to execute a search warrant for narcotics and firearms in a private residence.

In Terry, the Supreme Court addressed whether an investigatory detention and a contemporaneous protective frisk for a weapon were permissible. Id. at 15. The Court, recognizing the "long tradition of armed violence" by criminals and the necessity of an officer to assure himself that an

individual at close range is not armed with a weapon, held that

it is permissible in certain instances for an officer to conduct

a protective, minimally intrusive frisk.

> [W]e cannot blind ourselves to the need for
> law enforcement officers to protect
> themselves and other prospective victims of
> violence in situations where they may lack
> probable cause for an arrest. When an
> officer is justified in believing that the
> individual whose suspicious behavior he is
> investigating at close range is armed and
> presently dangerous to the officer or to
> others, it would appear to be clearly
> unreasonable to deny the officer the power
> to take necessary measures to determine
> whether the person is in fact carrying a
> weapon and to neutralize the threat of
> physical harm.

Id. at 23-24.

> [T]here must be a narrowly drawn authority
> to permit a reasonable search for weapons
> for the protection of the police officer,
> where he has reason to believe that he is
> dealing with an armed and dangerous
> individual, regardless of whether he has
> probable cause to arrest the individual for
> a crime. The officer need not be absolutely
> certain that the individual is armed; the
> issue is whether a reasonably prudent man in
> the circumstances would be warranted in the
> belief that his safety or that of others was
> in danger.

Id. at 27 (citations omitted).

Since Terry, the Supreme Court has applied the

reasonableness analysis to different fact situations with the

constant refrain that a limited, protective frisk for weapons

can be justified by the need for law enforcement officers to

protect themselves. See, e.g., Maryland v. Buie, 494 U.S. 325,

- 8 -

333 (1990) (officers have an interest in self-protection which can justify a protective sweep); Long, 463 U.S. at 1049 (protection of police and others can justify protective searches when police have a reasonable belief that an individual may pose a danger); Pennsylvania v. Mims, 434 U.S. 106, 111 (1977) ("What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.").  There is abundant, long-standing authority establishing that an unreasonable search prohibited by the Fourth Amendment does not arise when a law enforcement officer performs a protective pat-down when he or she "'reasonably believes, based on specific and articulable facts, that the [individual in the officer's presence] might be armed and dangerous.'"  Welshman, 28 Va. App. at 34, 502 S.E.2d at 129 (quoting Phillips v. Commonwealth, 17 Va. App. 27, 30, 434 S.E.2d 918, 920 (1993)) (emphasis added); see also Williams v. Commonwealth, 4 Va. App. 53, 66-67, 354 S.E.2d 79, 86 (1987) ("Once a police officer has [lawfully] detained a suspect he may conduct a limited pat-down search for weapons if he reasonably believes that the suspect might be armed and dangerous.").

### 3.  The Frisk of Murphy was Reasonable

Having established that a protective frisk is lawful where the facts available at the time of the search allow a man of reasonable caution to believe that the protective action is warranted, we now examine the circumstances of this case to

- 9 -

determine whether the frisk of Murphy was reasonable.  Terry, 392 U.S. at 21.

Here, significantly, the house was being searched because a magistrate determined that there was probable cause to believe the house was the site of a narcotics trafficking operation and that firearms were present and issued a search warrant authorizing a search of the house and the seizure of narcotics and firearms discovered.[3]  See Williams, 4 Va. App. at 67, 354 S.E.2d at 86-87; see generally Ruffin v. Commonwealth, 13 Va. App. 206, 409 S.E.2d 177 (1991).  Murphy and four others were present in the house when the warrant was executed.  It was reasonable to believe that he might have been involved in the narcotics operation, and the officers knew from experience that those involved in narcotics trafficking are often in possession of firearms.  "Firearms are as much 'tools of the trade' as are most commonly recognized narcotics paraphernalia," United States v. Oates, 560 F.2d 45, 62 (2d Cir. 1977), and "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence . . . ."  Summers, 452 U.S. at 702.

A "man of reasonable caution" would have believed that it was appropriate to subject Murphy to a brief frisk for weapons.

---

[3] Although the "material facts constituting probable cause" set forth in the affidavit given in support of the warrant made no mention of firearms, the affiant specified "guns" among the numerous items to be searched for.

- 10 -

See generally Terry, 392 U.S. at 21-22.  By conducting an immediate frisk of Murphy, Officer Harvey acted to minimize danger and to secure the area.

> [E]ven though the officers who detained [the appellant] had no information that he was armed or that he had a past history of violence, they acted reasonably when conducting a protective pat-down search for weapons in light of the fact that they had a reasonable suspicion that [he] was presently engaged in narcotics distribution.  To hold otherwise would be an invitation to violence in what is always a potentially explosive situation.

Williams, 4 Va. App. at 67, 354 S.E.2d at 87.

Murphy contends Ybarra, 444 U.S. 85, prohibits a police officer from conducting a protective frisk during the execution of a search warrant unless the individual is named in the warrant or otherwise identified.  We disagree.

The Supreme Court, in Ybarra, addressed whether it is constitutionally permissible to stop and frisk a person present in a public place where a narcotics search warrant is being executed.  In that case, police officers searched a bar pursuant to a warrant regarding heroin trafficking, but which did not authorize the search of anyone other than the named bartender. During the execution of the search warrant, the police frisked each of the bar's patrons.  Heroin was found on Ybarra, a patron.  In holding that the search of Ybarra was not supported by a reasonable belief that he was armed and presently dangerous, the Supreme Court explained that the frisk of Ybarra

- 11 -

was unjustified because the officers knew nothing about Ybarra "except that he was present, along with several other customers, in a public tavern at a time when the officers had reason to believe that the bartender would have heroin for sale." Id. at 91. The Supreme Court noted that in a public bar, during operation hours, it was just as likely that an individual was an innocent patron as it was that he was there in furtherance of the heroin trafficking operation.

We reject Murphy's contention that Ybarra is controlling. The protective frisk of Murphy was not a generalized, cursory search in a public place of business of the type limited by Ybarra. The frisk of Murphy, by contrast, took place in a private residence for which there was probable cause to believe was used in narcotics trafficking and that firearms were present. We have found such protective frisks in similar circumstances reasonable and justified. See Ruffin, 13 Va. App. at 208, 409 S.E.2d at 178.

The officers' duty required them to execute a search warrant in a place fraught with the potential for sudden violence. It was significantly more likely that Murphy was associated with the illegal narcotics activity in the specific private residence as compared to a random member of the public found in a public bar during the execution of a search warrant. See Hayes, 29 Va. App. at 655, 514 S.E.2d at 361. It was, therefore, reasonable for Officer Harvey to fear that Murphy, an

- 12 -

individual found in the private residence suspected of being the location of narcotics trafficking, was armed, particularly where the search warrant listed firearms as items to be searched for and seized.

Our holding is consistent with decisions of other jurisdictions that have considered the same issue. [4]   For example, in People v. Thurman, 257 Cal. Rptr. 517 (Cal. Ct. App. 1989), a California appellate court balanced the governmental interest in a search of an individual present on private premises against the extent of the intrusion on the individual's privacy.  In Thurman, police officers obtained a warrant to search a private apartment for drugs, narcotics paraphernalia, and various documents.  Id. at 518.  When the officers entered the apartment, they found Thurman sitting quietly and passively on a sofa.  Although the officers realized that the warrant did

---

[4] Other jurisdictions utilizing the rationale we have employed have upheld frisks of persons encountered during the execution of a narcotics search warrant in a private residence. See United States v. Jaramillo, 25 F.3d 1146 (2d Cir. 1994); United States v. Reid, 997 F.2d 1576 (D.C. Cir. 1993); United States v. Pace, 898 F.2d 1218 (7th Cir. 1990); People v. Thurman, 257 Cal. Rptr. 517 (Cal. Ct. App. 1989); State v. Harris, 384 S.E.2d 50 (N.C. 1989); State v. Zearley, 444 N.W.2d 353 (N.D. 1989); State v. Alamont, 577 A.2d 665 (R.I. 1990); State v. Guy, 492 N.W.2d 311 (Wis. 1992), cert. denied, 509 U.S. 914 (1993).  A few decisions, however, have disallowed the protective frisks on essentially identical facts, holding that an individual's "'mere presence' at a private residence being searched pursuant to a search warrant cannot justify a frisk of [his or her] person."  State v. Broadnax, 654 P.2d 96, 101 (Wash. 1982); see also United States v. Harvey, 897 F.2d 1300 (5th Cir. 1990).

- 13 -

not authorize a search of Thurman, one of the officers frisked him for weapons.

The court determined that the governmental interest of officer safety significantly outweighed the personal intrusion, and held the search to be lawful. Id. at 520. The court assessed the reasonableness of the officer's actions by weighing the extent of the intrusion on the individual searched against the safety concerns of law enforcement officials. Id. It found the intrusion insignificant compared to the need of police officers to protect themselves from potentially armed and dangerous narcotics traffickers. Id. Accordingly, the court concluded that law enforcement officers may lawfully frisk an individual present in a private residence during the execution of a search warrant for narcotics. Id. (conducting a protective search in such circumstances is "manifestly reasonable," even if the individual to be frisked does not appear threatening at the moment).

The court viewed Ybarra as inapplicable to searches on private premises for three reasons. Id. at 520-21. First, an individual present in a residence where narcotics transactions are taking place is likely to be involved in drug trafficking, inasmuch as a private residence does not attract visitors off the street as do public bars. Id. Second, private surroundings which have been judicially determined as the probable site of narcotics transactions are generally more dangerous than

locations open to the general public, such as bars.  Id.
Finally, suspected narcotics traffickers found in a residence
are more likely to be armed than are customers in a bar.  Id. at
521.

Following the reasoning in Thurman, the Wisconsin Supreme
Court, in State v. Guy, 492 N.W.2d 311 (Wis. 1992), cert.
denied, 509 U.S. 914 (1993), upheld the search of a person on
private premises on the ground that Ybarra does not apply to
private premises searches.  Id. at 316.  In Guy, the police
obtained a warrant to search a house for cocaine, scales, other
indicia of narcotics trafficking crimes, and a man identified as
"John Doe."  The next day, police officers entered the house to
execute the search warrant.  Upon entry, the officers took the
persons present in the house, including Guy, a woman not named
in the warrant, to the front porch and handcuffed them.  An
officer then frisked Guy even though she stood motionless and
did not appear armed.  Id. at 312-13.

Employing a balancing test of reasonableness, the Guy court
noted that a magistrate had already determined that the officers
had probable cause to search the house, thereby supplying the
reasonable and articulable suspicion of criminal activity
required by Terry.  Id. at 313-15.  The court then emphasized
the danger involved in executing a warrant to search for
narcotics.  Id. at 315-16.  The court viewed the searching
officer's suspicion that Guy was armed as reasonable, based not

- 15 -

upon a suspicion particular to anything Guy did in the officer's presence, but on the officer's personal experience regarding the violence associated with narcotics trafficking and the reasonable inferences the officer could have drawn from the facts surrounding the search.  Id.

We find the reasoned analysis in Thurman and Guy persuasive.  Where police officers execute a search warrant for narcotics at a location known for drug trafficking, pursuant to an affidavit seeking authority to search for firearms and a warrant permitting that search, a person of reasonable caution would surely deem a protective frisk of the occupants necessary for the safety of all concerned.  We do not see such a weapons frisk as falling within the ambit of a generalized cursory search in a public place as prohibited by Ybarra.

Accordingly, we affirm the decision of the trial court that Officer Harvey acted lawfully in conducting a protective frisk of Murphy, and hold the protective weapons frisk did not violate any protection afforded Murphy by the Fourth Amendment.

### C.  The Marijuana Seizure

In the alternative, Murphy contends the trial court erred in failing to suppress the evidence as the marijuana recovered from his pocket was seized outside the scope of Officer Harvey's protective frisk.  We disagree.

In Ruffin, 13 Va. App. 206, 409 S.E.2d 177, we upheld, during a lawful weapons frisk, the seizure of narcotics discovered on the defendant under the plain view doctrine.

> The plain view doctrine, articulated in Coolidge [v. New Hampshire, 403 U.S. 443 (1971)], permits the warrantless seizure of private possessions where three requirements are met. First, the "initial intrusion" of the police officer must be lawful or he must otherwise properly be in a position from which he can view the location of the seizure. Id. at 465-68. Second, the discovery of the item seized must be inadvertent. Id. at 470. Third, it must be "immediately apparent" to the police officer that the item he observes may be evidence of a crime, contraband, or otherwise subject to seizure. Id. at 466. In Horton v. California, [496 U.S. 128] (1990), the Supreme Court eliminated the necessity of the inadvertence requirement. Thus, two requirements must be met for the application of the plain view doctrine. First, the police officer must be lawfully present. Second, it must be "immediately apparent" to the police officer that the item to be seized may be evidence of a crime, contraband or otherwise subject to seizure.

Id. at 208-09, 409 S.E.2d at 178-79.

In Minnesota v. Dickerson, 508 U.S. 366 (1993), cited by the Commonwealth as authority to uphold the decision of the trial court in the case at bar, the Supreme Court upheld a similar analysis.[5] See id. at 375-76.

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity

_____

[5] Subsequently, the analysis has been termed the "plain feel doctrine."

- 17 -

> immediately apparent, there has been no
> invasion of the suspect's privacy beyond
> that already authorized by the officer's
> search for weapons; if the object is
> contraband, its warrantless seizure would be
> justified by the same practical
> considerations that inhere in the plain-view
> context.

Id. Thus, if the contour or mass of the object makes its

identity as contraband immediately apparent, the officer may

lawfully seize it.[6]

We have already held that Murphy was lawfully frisked, so

the first prong of the plain feel doctrine is met:  the initial

intrusion was lawful.  The inquiry then turns on whether it was

immediately apparent that the object discovered was contraband.

We hold that the seizure was lawful as Officer Harvey testified,

without contradiction, that he knew the bulge was a plastic

baggy and that he believed, based on his training and

experience, that it was marijuana.  He identified the item when

he first felt it.  There is no evidence in the record before us

that any additional manipulation of the baggy was necessary or

occurred.  Officer Harvey's identification of the marijuana is

strikingly similar to the plain feel seizure in Ruffin:

> The object detected by [the officer] was not
> a facially innocent vessel of a type
> employed by law-abiding citizens, on a daily
> basis, for legitimate uses.  It was, on the

---

[6] This was the case in Ruffin, where the officer seized an object inside the defendant's sock, as it was immediately apparent that it was "an unnatural mass, carried in a manner of concealment, consistent with the transportation of illegal drugs."  13 Va. App. at 211, 409 S.E.2d at 180.

> contrary, an unnatural mass, carried in a
> manner of concealment, consistent with the
> transportation of illegal drugs.  The
> circumstances surrounding the discovery, the
> nature of the search warrant, . . . and the
> discovery of the packet under the
> [defendant's] sock gave [the officer]
> probable cause to believe that it contained
> illegal drugs and authorized its seizure.

13 Va. App. at 211, 409 S.E.2d at 180 (footnote omitted).

We are not persuaded by Murphy's contention, citing Harris
v. Commonwealth, 241 Va. 146, 400 S.E.2d 191 (1991), and Hayes,
29 Va. App. 647, 514 S.E.2d 357, that the plain feel doctrine
does not apply.  We find Harris and Hayes distinguishable from
the case at bar and hold the trial court properly applied the
plain feel doctrine to the facts of this case.  In Harris the
item seized was a film canister whose contents could not
possibly have been detected by the tactile sense of the police
officer.  241 Va. at 152-54, 400 S.E.2d at 195-96.  In Hayes,
the police officer testified the object he felt during the frisk
was "'a lump' . . . [']something in his pocket.'"  29 Va. App.
at 660, 514 S.E.2d at 363.  Only after manipulating the "lump"
did the officer suspect it was cocaine.  In both Harris and
Hayes, the identity of the object seized during the frisk was
not "immediately apparent" and required, in effect, an
additional search for the officer to suspect contraband.  The
uncontroverted record in this case reflects it was immediately
apparent to the officer, based on the totality of the

- 19 -

circumstances including his training and experience, that the object he touched was likely contraband.

Therefore, viewed in the light most favorable to the Commonwealth, the evidence supported the trial court's denial of the appellant's motion to suppress on this issue.  See Welshman, 28 Va. App. at 36, 502 S.E.2d at 129.  If an officer discovers "contraband other than weapons [during a search for weapons], he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances."  Long, 463 U.S. at 1050; see also Guy, 492 N.W.2d 311.  Under the plain feel doctrine, the officer was not limited to seizing weapons.  Officer Harvey seized the marijuana lawfully.

For the foregoing reasons, the decision of the trial court to deny the motion to suppress is upheld and the appellant's convictions affirmed.[7]

Affirmed.

---

[7] Murphy also challenged the officers' actions in forcing him to spit out the contraband he hid in his mouth.  At oral argument, however, he conceded that if the frisk and the seizure of the marijuana were lawful, the seizure of the cocaine and heroin was lawful as a search and seizure incident to arrest. We agree and do not further address this question as the full search was performed after Murphy was arrested for possession of marijuana and it is well established that the police may conduct a full search incident to a lawful custodial arrest.  See United States v. Robinson, 414 U.S. 218 (1973).