IN RE INTEREST OF ANDRE W., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. ANDRE W., APPELLANT.
584 N.W. 2d 474

Filed August 25, 1998.    No. A-97-1169.

Dennis R. Keefe, Lancaster County Public Defender, and Jenny R. Witt for appellant.

Gary Lacey, Lancaster County Attorney, and Marcie Hagerty for appellee.

HANNON, IRWIN, and INBODY, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Andre W. appeals the adjudication order of the separate juvenile court of Lancaster County in which the court found beyond a reasonable doubt that Andre had knowingly or intentionally possessed a controlled substance, to-wit, cocaine, in violation of Neb. Rev. Stat. § 28-416(3) (Reissue 1995), and therefore concluded that Andre was a child as defined by Neb. Rev. Stat. § 43-247(2) (Supp. 1997). On appeal, Andre contends that the juvenile court erred in failing to grant his motion to suppress. For the reasons stated below, we affirm.

## II. FACTUAL BACKGROUND

A juvenile petition was filed in this case on September 18, 1997. The State alleged that Andre was a child as defined by § 43-247(2) because he had possessed cocaine in violation of § 28-416(3). Andre filed a motion to suppress all evidence seized as a result of a seizure and search of his person, contending that his constitutional rights were violated. A hearing was held on the motion on October 27. Dennis W. Miller, the police officer who discovered the cocaine on Andre's person as a result of a pat-down search for weapons, testified for the State. Andre also testified.

The facts are generally undisputed. We summarize the testimony of Miller, a police officer with the Lincoln Police Department. Miller is a detective sergeant with 18 years' experience who is assigned to the specialized drug unit of the department. On September 17, 1997, at approximately 9:50 p.m., Miller was supervising the execution of a search warrant at 2805 F Street, a residential apartment. The warrant was a night-

time, no-knock warrant authorizing a search for controlled substances, other drug-related evidence, and an individual known as Crumb. Crumb was described in the warrant as a "black male 5'7", thin build, wearing a white T-shirt and blue slacks."

The officers gained forcible entry into the apartment. All persons found inside were handcuffed and removed from the residence. Andre, a young black male dressed in a white T-shirt, blue jeans, and high-top tennis shoes, was found on a bed in a bedroom of the apartment. Andre indicated that he did not live at the apartment.

After Andre was taken outside, Miller conducted a pat-down search of Andre's person for weapons. According to Miller, at the time of the pat down, Andre was suspected of distribution of cocaine. Informants had indicated that no one actually lived at the apartment and that the only use of the apartment was to distribute crack cocaine. The informant had purchased crack cocaine from a person who described his contact at the apartment as a younger black male named "Crumb," dressed in a white T-shirt and blue jeans.

As part of the pat-down search, Miller had Andre remove his high-top tennis shoes in order to search for weapons. He did so because, based on his experience, people encountered in this type of situation often have weapons, including knives and razor blades, hidden in their socks and shoes. While patting down Andre's socks, Miller felt an object inside one sock that he "immediately" knew to be crack cocaine, based on his training and experience. Miller then removed the crack cocaine and arrested Andre.

After hearing the evidence, the court overruled the motion to suppress. On October 30, 1997, a trial was had on stipulated facts, at which time Andre preserved his objection to the receipt of the evidence obtained as a result of the seizure and search. Thereafter, the court found beyond a reasonable doubt that Andre had illegally possessed cocaine and exercised its jurisdiction over him. This appeal timely followed.

## III. ASSIGNMENTS OF ERROR

Generally, Andre assigns that the juvenile court erred in overruling his motion to suppress and that there was insufficient evidence to adjudicate Andre under the Nebraska Juvenile Code.

## IV. ANALYSIS

### 1. Standard of Review

In reviewing a trial judge's ruling on a motion to suppress, the ultimate determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches are reviewed de novo and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). Apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, a trial judge's ruling on a motion to suppress is to be upheld on appeal unless its findings of fact are clearly erroneous. *Konfrst, supra; State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996). In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.* Regarding questions of law, an appellate court is obligated to reach a conclusion independent of that of the lower court. *J.C. Penney Co. v. Balka*, 254 Neb. 521, 577 N.W.2d 283 (1998).

### 2. Detention

Andre first argues that the seizure of his person was an arrest which was not supported by probable cause. In response, the State argues that pursuant to the U.S. Supreme Court's holding in *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981), the detention of Andre was a permissible investigatory stop pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

### (a) *Summers* Case

In *Summers, supra*, an occupant of a residence was detained by police while they executed a search warrant for narcotics. After narcotics were found on the premises, the occupant was arrested and searched. The defendant sought to suppress the narcotics, claiming that he was detained in violation of the Fourth Amendment to the U.S. Constitution. The U.S. Supreme Court concluded that the detention of the defendant was constitutionally permissible.

In assessing the justification for the detention, the *Summers* Court considered the law enforcement interests and the nature of the facts supporting the detention. The legitimate law enforcement interests identified by the Court were the interest in preventing flight and, "of greater importance," the interest in minimizing the risk of harm to the officers. 452 U.S. at 702. The Court stated:

> Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.

452 U.S. at 702-03.

The Court also found it appropriate to consider the existence of a search warrant. The Court stated that the search warrant

> provides an objective justification for the detention. A judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime. Thus a neutral magistrate rather than an officer in the field has made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home. The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant.

452 U.S. at 703-04.

### (b) Application to Facts

Just as was the defendant in *Summers, supra*, Andre was detained by the police during the execution of a search warrant for controlled substances. The police could reasonably believe that Andre was an occupant of the premises because he was found on a bed in a bedroom and because he matched the general description set forth in the search warrant of the individual called Crumb. Based on the *Summers* holding, we conclude that the detention of Andre was constitutionally permissible.

### 3. Pat-Down Search

Andre also challenges the police's right to conduct a pat-down search. He argues that such a search is unconstitutional pursuant to the U.S. Supreme Court's holding in *Ybarra v. Illinois*, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979).

### (a) Relevant Case Law

■ Pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), a police officer who reasonably believes that a person may be armed and dangerous is entitled for the protection of himself or herself and others to conduct a carefully limited search of the outer clothing of such person in order to discover weapons which may be used to assault him or her. See, *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997); *State v. Caples*, 236 Neb. 563, 462 N.W.2d 428 (1990).

In *Ybarra, supra*, a pat-down search was conducted on several patrons of a public tavern. The patrons were searched during the execution of a warrant to search the tavern and a bartender for controlled substances. The Court rejected the State's argument that despite a lack of probable cause to search Ybarra, the pat down was justified as a search for weapons under the *Terry* doctrine. The *Ybarra* Court held that "[t]he initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a patdown of a person for weapons." 444 U.S. at 92-93. The Court regarded the pat-down search to be a "generalized 'cursory search for weapons.' " 444 U.S. at 93-94. The Court observed that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91.

We do not find *Ybarra* to be controlling, because of its factual dissimilarity to the case before us. The *Ybarra* holding is limited by the facts of that case. *Ybarra* involved the patting down of customers at a tavern, whereas our case involves the patting down of occupants of a private residence. The reasons set forth by the U.S. Supreme Court in *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981), to justify the detention of occupants of a private residence during the

execution of a warrant apply with equal force to justify the patting down of occupants of a private residence during the execution of a search warrant. The execution of a warrant to search for controlled substances may give rise to sudden violence and other frantic efforts. See *id.* Furthermore, the search warrant provides an objective justification for the police to believe those in the residence are engaged in criminal activity and are armed and dangerous. *Id.*

In *People v. Thurman*, 209 Cal. App. 3d 817, 257 Cal. Rptr. 517 (1989), a California appeals court addressed a situation factually similar to that before us. In distinguishing *Ybarra, supra*, the court stated:

> Unlike a business open to the general public, a private residence does not attract casual visitors off the street. When the private residence has been judicially determined as the probable site of narcotic transactions, the occupants are very likely to be involved in drug trafficking in one form or another. Moreover, because of the private nature of the surroundings and the recognized propensity of persons "engaged in selling narcotics [to] frequently carry firearms to protect themselves from would-be robbers," [citations omitted] the likelihood that the occupants are armed or have ready accessibility to hidden weapons is conspicuously greater than in cases where, as in *Ybarra*, the public freely enters premises where legal business is transacted.

209 Cal. App. 3d at 824-25, 257 Cal. Rptr. at 520-21. The *Thurman* court rejected the defendant's argument that the police had no reason to believe he was armed and dangerous and that therefore, under *Terry, supra*, the search was unlawful. The court stated:

> We have no hesitation whatever in holding that [the officer] acted reasonably and prudently in conducting the pat search of [the defendant] in the circumstances. Here, a neutral and detached magistrate had judicially approved a warranted search for evidence of drug trafficking at the private residence where appellant was found. The officers whose duty required them to execute the warranted search were thus well aware they were engaged in an undertaking fraught with the potential for sudden violence. They were

> necessarily cognizant of the very real threat that the occupants of the residence were within an environment where weapons are readily accessible and often hidden, nor could they discount the possibility that one or more of the individuals found inside were personally armed.
>
> . . . That [the defendant's] posture, at that moment, was non-threatening does not in any measure diminish the potential for sudden armed violence that his presence within the residence suggested. To require an officer to await an overt act of hostility, as [the defendant] suggests, before attempting to neutralize the threat of physical harm which accompanies an occupant's presence in a probable drug trafficking residential locale, would be utter folly.

209 Cal. App. 3d at 823, 257 Cal. Rptr. at 520. Other jurisdictions have adopted the *Thurman* holding. See, *State v. Guy*, 172 Wis. 2d 86, 492 N.W.2d 311 (1992), *cert. denied* 509 U.S. 914, 113 S. Ct. 3020, 125 L. Ed. 2d 709 (1993); *State v. Alamont*, 577 A.2d 665 (R.I. 1990); *State v. Zearley*, 444 N.W.2d 353 (N.D. 1989). See, also, *State v. Trine*, 236 Conn. 216, 673 A.2d 1098 (1996) (applying reasoning of *Summers, supra*, to justify pat-down search of occupants of private residence during execution of search warrant). Although we recognize that some jurisdictions have applied the *Ybarra* holding to pat-down searches of occupants of private residences, see, *United States v. Ward*, 682 F.2d 876 (10th Cir. 1982); *United States v. Cole*, 628 F.2d 897 (5th Cir. 1980), *cert. denied* 450 U.S. 1043, 101 S. Ct. 1763, 68 L. Ed. 2d 241 (1981); *State v. Carrasco*, 147 Ariz. 558, 711 P.2d 1231 (Ariz. App. 1985); *Lippert v. State*, 664 S.W.2d 712 (Tex. App. 1984); *State v. Broadnax*, 98 Wash. 2d 289, 654 P.2d 96 (1982), we find more persuasive the line of cases applying the *Thurman* holding.

### (b) Resolution

In the case before us, the police were executing a search warrant on a private residence. The warrant authorized the search for controlled substances and other items related to the distribution of controlled substances. The police were aware that according to informants, the only use of the apartment to be searched was to distribute crack cocaine. When the police

forcibly entered the apartment, there were several individuals, including Andre, present. Andre was found on a bed in a bedroom and matched the general description provided in the warrant of the person dealing drugs from that apartment. As discussed above, it was proper for the police to detain Andre. Under these circumstances, we conclude that Miller's belief that Andre could be armed and dangerous was reasonable. Therefore, the pat down of Andre for weapons for officer safety reasons was constitutionally permissible.

### 4. SCOPE OF PAT-DOWN SEARCH

Next, we address the scope of the pat-down search. Andre argues that the officer exceeded the lawful scope of a pat-down search when the officer had him remove his shoes and patted his socks. During the pat down of Andre's socks, the officer felt an object which he "immediately" recognized to be crack cocaine.

As discussed above, police may conduct a limited search of the outer clothing of an individual they reasonably believe is armed and dangerous. See, *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997); *State v. Caples*, 236 Neb. 563, 462 N.W.2d 428 (1990). Neither this court nor the Nebraska Supreme Court has addressed whether such a search may include the removal of high-top shoes and the patting down of socks. However, other states which have addressed issues similar to those before us have found that a pat down which includes the removal of a shoe and patting down of a sock, or a look into a boot, is legal if the officer conducted the search with the appropriate intentions, that is, to reveal weapons. See, *Hodges v. State*, 678 So. 2d 1049 (Ala. 1996); *Stone v. State*, 671 N.E.2d 499 (Ind. App. 1996); *State v. Mitchell*, 87 Ohio App. 3d 484, 622 N.E.2d 680 (1993); *Thompson v. State*, 551 So. 2d 1248 (Fla. App. 1989); *Commonwealth v. Borges*, 395 Mass. 788, 482 N.E.2d 314 (1985).

In the case before us, Miller testified at the suppression hearing that his purpose in having Andre remove his high-top tennis shoes and in patting down Andre's socks was to search for weapons. Miller testified that based on his training and experience, people encountered while a warrant to search for controlled substances is being executed often have weapons hidden

in their socks and shoes. According to Miller, weapons that may be hidden in socks and shoes include knives and razor blades.

It is clear from the record that Miller had Andre remove his shoes and patted down Andre's socks with the proper intentions, that is, to ensure that Andre had no hidden weapons. Therefore, we conclude that the scope of the pat-down search was proper.

### 5. SEIZURE OF CRACK COCAINE

Finally, we address the seizure of the crack cocaine from Andre's sock. While patting down Andre's sock, Miller felt an object which he knew "immediately" was crack cocaine. He then removed the object from the sock and arrested Andre.

A *Terry* search is ordinarily limited to outer clothing. See *Caples, supra.* However, in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993), the U.S. Supreme Court held that an officer may make a warrantless seizure of nonthreatening contraband detected during a pat-down search permitted by *Terry*, so long as the search stays within the bounds marked by *Terry*. The Court reached its conclusion by drawing an analogy to the plain-view doctrine. The Court stated:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified[.]

508 U.S. at 375-76. This has become known as the plain-feel doctrine. See *State v. Craven,* 253 Neb. 601, 571 N.W.2d 612 (1997).

In *State v. Craven*, 5 Neb. App. 590, 560 N.W.2d 512 (1997), *affirmed* 253 Neb. 601, 571 N.W.2d 612, a panel of this court applied the plain-feel doctrine. This application of the plain-feel doctrine was affirmed by the Nebraska Supreme Court. In *Craven*, a police officer felt an object during a pat-down search which, based upon his training and experience and without manipulation or further examination, he recognized as an object of criminal activity. As a result, the officer was justified in plac-

ing his hand in a pocket in order to retrieve what he reasonably believed to be contraband. See *id.*

Similarly, in the case before us, Miller testified that upon feeling an object inside Andre's sock during the pat-down search, he "immediately" recognized it as crack cocaine, based upon his training and experience. As a result, Miller possessed a reasonable belief that Andre was illegally in possession of a controlled substance. Therefore, based on *Craven, supra,* Miller was justified in placing his hand inside Andre's sock and retrieving the crack cocaine.

## V. CONCLUSION

In summary, the detention of Andre, the subsequent pat-down search, and the seizure of the crack cocaine were proper. As a result, Andre's motion to suppress was properly denied. Because the crack cocaine was properly admitted at trial, there was sufficient evidence for the juvenile court to find Andre to be a child as defined by § 43-247(2). Therefore, Andre's second assigned error is without merit.

We affirm the judgment of the separate juvenile court of Lancaster County.

AFFIRMED.