IN RE INTEREST OF ANDRE W., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. ANDRE W., APPELLANT.
590 N.W. 2d 827

Filed March 5, 1999.    No. S-97-1169.

Dennis R. Keefe, Lancaster County Public Defender, and Jenny R. Witt for appellant.

Gary Lacey, Lancaster County Attorney, and Marcie Hagerty for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

In an adjudication order entered on November 3, 1997, the separate juvenile court of Lancaster County concluded that Andre W. was a child as defined by Neb. Rev. Stat. § 43-247(2) (Supp. 1997), because he had knowingly or intentionally possessed a controlled substance, crack cocaine, in violation of Neb. Rev. Stat. § 28-416(3) (Reissue 1995). In his appeal from this order, Andre contended that the juvenile court erred in failing to grant his motion to suppress certain evidence. The Nebraska Court of Appeals affirmed, and we granted Andre's petition for further review. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

A juvenile petition was filed in this case on September 18, 1997. The State alleged that Andre was a child as defined by § 43-247(2) because he had possessed cocaine, in violation of § 28-416(3). Andre filed a motion to suppress all evidence recovered as a result of a search and seizure of his person, contending that his constitutional rights were violated. A suppression hearing was held on October 27. Dennis W. Miller, the police officer who discovered the cocaine on Andre's person during a pat-down search for weapons, testified for the State. Andre also testified.

Miller is a detective sergeant with 18 years' experience assigned to the specialized drug unit of the Lincoln Police Department. On September 17, 1997, at approximately 9:50 p.m., Miller was supervising the execution of a search warrant at a Lincoln apartment. The warrant was a nighttime, no-knock warrant authorizing a search for controlled substances, other drug-related evidence, and an individual known as Crumb, who was described in the warrant as a "black male 5'7", thin build, wearing a white T-shirt and blue slacks."

The officers gained forcible entry into the apartment. Andre, then 15 years old and dressed in a white T-shirt, blue jeans, and high-top tennis shoes, was found in a bedroom of the apartment. He told the officers that he did not live at the apartment. Andre and other occupants of the apartment were handcuffed and taken outside so that a canine sniff of the apartment could be conducted. Miller testified that the occupants were handcuffed

and removed for safety purposes and that this was standard procedure for his unit.

After Andre was taken outside, Miller conducted a pat-down search of Andre's person. At the time of the search, Miller suspected that Andre was involved in distribution of crack cocaine. Informants had indicated that no one actually lived in the apartment and that it was used solely for the distribution of controlled substances. Andre fit the general description of the person referred to in the search warrant as "Crumb." Miller testified: "My purpose of searching was for officer safety, to make sure he didn't have any weapons on him because I didn't know who he was at the time."

As part of the pat-down search, Miller had Andre remove his high-top tennis shoes in order to search for weapons. Miller stated that he did so because people encountered in similar circumstances "frequently hide weapons in their socks and in their shoes." He stated that he had found knives and razor blades concealed in shoes on prior occasions but admitted that he had not personally found such weapons concealed within a person's sock. Miller further testified that persons who are removed from premises being searched for drugs are handcuffed for the safety of police but are also searched for weapons because "on several occasions I've had people that were able to slip the handcuffs — their arms from behind up to the front which gives them access to any weapons they may have on their person." While patting down Andre's socks, Miller felt an object inside one sock that he "immediately" recognized as crack cocaine, based on his training and experience. Miller then removed the crack cocaine and arrested Andre.

Following the hearing, the juvenile court overruled Andre's motion to suppress. On October 30, 1997, the case was tried on stipulated facts, and Andre preserved his objection to the receipt of the evidence obtained as a result of the search and seizure. Thereafter, the court found beyond a reasonable doubt that Andre had illegally possessed cocaine and exercised its jurisdiction over him. Andre appealed, and the Court of Appeals affirmed on the basis that the detention of Andre, the subsequent pat-down search, and the seizure of the crack cocaine were all constitutionally permissible. *In re Interest of Andre W.,*

7 Neb. App. 539, 584 N.W.2d 474 (1998). We granted Andre's petition for further review.

## II. ASSIGNMENTS OF ERROR

On appeal, Andre assigned that the juvenile court erred in overruling his motion to suppress and in finding there was sufficient evidence to adjudicate him under the provisions of the Nebraska Juvenile Code. In his petition for further review, Andre assigns that the Court of Appeals erred in affirming the judgment of the juvenile court.

## III. STANDARD OF REVIEW

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998), *cert. denied* ___ U.S. ___, 119 S. Ct. 139, 142 L. Ed. 2d 112.

A trial court's ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo. However, findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. See, *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997); *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997).

## IV. ANALYSIS

Andre contends that the actions of the police in detaining him constituted a seizure or an arrest within the meaning of the Fourth Amendment and that such a seizure or arrest was impermissible because the police did so without probable cause. The State contends that the detention was a permissible investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Andre argues that the actions of the police in detaining him, conducting a search which included the removal of his shoes, and seizing narcotics from inside his sock were beyond the scope of a permissible *Terry* stop and consti-

tuted a warrantless search done without probable cause. Thus, Andre argues that the warrantless seizure of cocaine from his sock violated his rights under U.S. Const. amend. IV, which protects citizens against unreasonable searches and seizures by the government. See *Craven, supra.*

### 1. APPLICABILITY OF FOURTH AMENDMENT

A seizure in the Fourth Amendment context occurs when " ' "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." ' " *Soukharith*, 253 Neb. at 320, 570 N.W.2d at 353. Further, "[w]henever a police officer restrains an individual's liberty by force or some show of authority, the officer has 'seized' that person for purposes of the fourth amendment." *State v. Caples*, 236 Neb. 563, 566, 462 N.W.2d 428, 430 (1990).

It is undisputed that Andre was handcuffed immediately before and during the pat-down search. Under such circumstances, a reasonable person clearly would not believe he or she was free to leave. Thus, the protection against unreasonable searches and seizures guaranteed by the Fourth Amendment applies to this case, necessitating an examination of whether Andre's constitutional rights were violated.

### 2. DETENTION

Andre contends that the detention during which he was handcuffed and searched was an arrest without probable cause and therefore constitutionally impermissible. The Court of Appeals determined that the detention was a permissible investigatory stop pursuant to *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981). *In re Interest of Andre W.*, 7 Neb. App. 539, 584 N.W.2d 474 (1998). We agree and adopt the reasoning of the Court of Appeals that under *Summers, supra*, the detention did not rise to the level of an arrest without probable cause and that the detention was a permissible investigatory stop pursuant to *Terry, supra*.

### 3. PAT-DOWN SEARCH

Andre argues that under *Ybarra v. Illinois*, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979), the officers were not justi-

fied in searching his person based upon his mere presence in the apartment when the search warrant was executed. The Court of Appeals held that *Ybarra*, which involved a pat down of tavern patrons during the execution of a search warrant, was not controlling under the circumstances of this case, which involved patting down occupants of a private residence during the execution of a search warrant. Based upon the reasoning of *Summers, supra*, and *People v. Thurman*, 209 Cal. App. 3d 817, 257 Cal. Rptr. 517 (1989), and noting the evidence indicating that the apartment in which Andre was found had been used solely for the distribution of crack cocaine, the Court of Appeals determined the pat down was justified on the basis of a reasonable belief that persons in the apartment were engaged in criminal activity and were armed and dangerous. *In re Interest of Andre W., supra*. We agree with and adopt the reasoning of the Court of Appeals on this issue.

#### 4. SCOPE OF PAT-DOWN SEARCH

Andre next contends that even if the police were justified in conducting a pat-down search, the actions of the police in asking him to remove his shoes and patting down his socks exceeded the permissible scope of a pat down for weapons under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The standard has long been that an officer who reasonably believes that a person is armed and dangerous is entitled for the protection of himself or herself and others to conduct a carefully limited search of the outer clothing of such person in order to discover weapons which may be used to assault him or her. See *id.*; *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997).

The majority of states which have addressed the issue have found that a pat-down search involving the removal of a shoe is permissible under *Terry* if the officer acted with the intent of finding concealed weapons. See, *C.G. v. State*, 689 So. 2d 1246 (Fla. App. 1997); *Stone v. State*, 671 N.E.2d 499 (Ind. App. 1996); *Hodges v. State*, 678 So. 2d 1049 (Ala. 1996). But see *State v. Mitchell*, 87 Ohio App. 3d 484, 622 N.E.2d 680 (1993) (search of shoes impermissible absent sufficient articulable facts indicating that reasonably prudent person would believe

defendant to be armed and dangerous); *Thompson v. State*, 551 So. 2d 1248, 1249 (Fla. App. 1989) ("[a]n officer may not continue to search the inside of a suspect's shoes in the hopes of finding contraband unless the officer reasonably believes the object concealed might be a weapon"); *Commonwealth v. Borges*, 395 Mass. 788, 482 N.E.2d 314 (1985) (search of shoe beyond scope permitted by *Terry*, absent evidence that officers feared for their safety in asking defendant to remove his shoes).

For example, in *Stone, supra,* police investigating a possible drug transaction conducted a pat-down search of a suspect that included the removal of his high-top tennis shoes. Noting that the officer's motivation in looking in the shoes was to uncover weapons that might be hidden there and not to look for drugs, the Indiana Court of Appeals held that such a search was permissible pursuant to *Terry, supra.* In particular, the court stated:

> [The officer] asked [the suspect] to remove his shoe solely for the purpose to ensure the safety of the situation. It is not unreasonable for a reasonable and prudent person to suspect a weapon could be hidden in an untied high top athletic shoe. Requesting the removal of a shoe is not overly intrusive given a situation where the officer sincerely fears a hidden weapon might be concealed. The nature of determining the appropriate scope of police action in any given situation is extremely fact sensitive.

*Stone*, 671 N.E.2d at 503. Likewise, in *Hodges, supra,* the court determined that police officers could lift a suspect's pant leg and look in the suspect's boot when the officers had a reasonable fear that the suspect could easily have hidden weapons there.

Miller testified that on the basis of his training and experience, persons encountered during execution of a warrant to search premises for controlled substances were known to conceal weapons in their socks and shoes, and that his search of Andre was for the specific purpose of finding concealed weapons. At the time of the search, Miller had a reasonable basis for suspecting that Andre was involved in illegal narcotics distribution, since Andre was encountered in what an informant had essentially described as a "crack house" and generally fit the description of the suspected drug dealer set forth in the

search warrant. Under the totality of the circumstances reflected in this record, we agree with the Court of Appeals that Miller had a reasonable and articulable suspicion that Andre might have a concealed weapon in his shoe or sock and that the removal of Andre's shoes and pat down of his socks constituted a reasonable, nonintrusive search for weapons which did not violate Andre's rights under the Fourth Amendment.

### 5. SEIZURE OF COCAINE

Andre's final argument is that the police could not seize the cocaine based on what has been referred to as the "plain-feel" doctrine as established by *Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993), and adopted by this court in *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997). Noting that Miller testified that he "'immediately'" perceived the lump in Andre's sock to be crack cocaine and citing to our opinion in *Craven, supra*, the Court of Appeals determined that the seizure was appropriate pursuant to the plain-feel doctrine. *In re Interest of Andre W.*, 7 Neb. App. 539, 548, 584 N.W.2d 474, 480 (1998). We agree and adopt the reasoning of the Court of Appeals on this issue.

Finding no error, we affirm the judgment of the Court of Appeals.

AFFIRMED.