IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. JOHNSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SCOTT A. JOHNSON, APPELLANT.

Filed May 8, 2018.    No. A-17-631.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Matt Catlett, of Law Office of Matt Catlett, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Following his conviction in the district court for Lancaster County for possession of methamphetamine, Scott A. Johnson appeals the denial of his motion to suppress and his motions for absolute discharge. Finding no error, we affirm.

## II. BACKGROUND

This case arises out of a traffic stop of Johnson, which resulted in his arrest and conviction for possession of methamphetamine. This is the third time this case has come before us. See, *State v. Johnson*, 22 Neb. App. 747, 860 N.W.2d 222 (2015) (*State v. Johnson I*); *State v. Johnson*, No. A-15-1071, 2016 WL 3519924 (Neb. App. June 21, 2016) (selected for posting to court website) (*State v. Johnson II*).

- 1 -

## 1. CHARGES, MOTIONS TO SUPPRESS AND DISCHARGE, AND FIRST APPEAL

As recited in *State v. Johnson I*:

On June 7, 2012, Johnson was charged by information with possession of a controlled substance [methamphetamine].

. . . .

On January 17, 2013, Johnson filed a motion to suppress. The motion was heard on March 20, and the court took the motion under advisement. The court entered an order overruling the motion to suppress on December 2.

On December 20, 2013, Johnson filed a motion for absolute discharge. In the motion, Johnson specifically asserted that his motion for discharge was based on his allegations that he had been denied both his statutory and his constitutional rights to speedy trial.

. . . .

On January 15, 2014, the district court entered an order overruling Johnson's motion for discharge.

22 Neb. App. at 749-50, 860 N.W.2d at 225-26.

Johnson appealed, and this court affirmed the district court's determination that Johnson's statutory right to speedy trial had not been violated. However, we determined that the court had not made the required findings with respect to Johnson's constitutional speedy trial claim, and we remanded for the court to consider the constitutional speedy trial issue. See *State v. Johnson I, supra*.

## 2. REMAND, SECOND MOTION TO DISCHARGE, AND SECOND APPEAL

Then, as recited in *State v. Johnson II*:

On remand, the district court issued an order finding Johnson had not been denied his constitutional right to a speedy trial. The order was dated April 17, 2015. Johnson did not appeal from the order on remand.

On May 28, 2015, Johnson filed a second motion for absolute discharge on both statutory and constitutional speedy trial grounds. Johnson's second motion for absolute discharge asserted the same time period violated his speedy trial rights as had his first motion for absolute discharge. The only difference between Johnson's first and second motions for absolute discharge was that the second motion alleged that the district court judge had informed Johnson's counsel, off the record, that she had forgotten to rule on Johnson's motion to suppress and that was the reason for the delay.

At a hearing on May 29, 2015, the district court judge who Johnson alleged had forgotten to rule on his motion recused herself. On July 29, 2015, a different judge determined that the entire judicial district should be recused from the case, and the case was reassigned to a judge from outside the district.

On September 15, 2015, Johnson filed a praecipe for witness subpoena for the judge who had initially presided over his case and who he alleged had forgotten to rule on his motion to suppress. After the subpoena was issued, the judge filed a motion to quash the subpoena. The judge asserted that she could not be compelled to testify as to the mental processes involved in her official acts as a judge.

The court held a hearing on the motion to quash the subpoena on October 16, 2015. On October 22, . . . the district court issued an order quashing the subpoena and overruling Johnson's motion for absolute discharge. In its order, the district court held that the issues presented in Johnson's second motion for absolute discharge 'ha[ve] been litigated and decided.' The court therefore dismissed Johnson's motion and quashed the subpoena for the judge who had presided over the motion to suppress.

Johnson appeal[ed] from the October 22, 2015, order denying his second motion for absolute discharge and quashing the subpoena.

2016 WL 3519924 at *1-2.

After determining that Johnson's second appeal concerned only the denial of his constitutional speedy trial claim and the quashing of the related subpoena, neither of which was a final, appealable order, we dismissed Johnson's second appeal for lack of jurisdiction. See *id.*

### 3. TRIAL, CONVICTION, AND SENTENCING

On February 3, 2017, a stipulated bench trial was held before the district court. Johnson renewed his previous motion to suppress and "motion for . . . a discharge . . . on the basis that his constitutional speedy trial rights have been violated and/or a motion for a discharge on the basis that the mandate wasn't followed correctly." The State offered copies of law enforcement incident reports and a Nebraska State Patrol crime laboratory report, which were received over Johnson's objections. The parties also stipulated that the deputy who initially stopped Johnson would testify consistently with the information contained in his reports, that the person testing the substance recovered from Johnson was qualified to do so and performed the testing consistently with the relevant testing protocol, and that all the events occurred in Lancaster County, Nebraska. The court advised Johnson of his right to choose whether to testify, and Johnson indicated his understanding and waived his right. The court took the matter under advisement and on March 8, found Johnson guilty of possession of methamphetamine. The court subsequently sentenced Johnson to 3 years' probation, and Johnson perfected the present appeal.

### III. ASSIGNMENTS OF ERROR

Johnson asserts, restated, that the district court erred in (1) denying his motion to suppress and (2) denying both his December 2013 and his May 2015 motions for discharge on constitutional speedy trial grounds and quashing all subpoenas.

### IV. STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Nunez,*

299 Neb. 340, 907 N.W.2d 913 (2018). Regarding historical facts, an appellate court reviews the trial court's findings for clear error. *Id.* But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Nunez, supra.*

The construction of a mandate issued by an appellate court presents a question of law on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Payne*, 298 Neb. 373, 904 N.W.2d 275 (2017).

As a general rule, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Lintz*, 298 Neb. 103, 902 N.W.2d 683 (2017).

V. ANALYSIS

1. MOTION TO SUPPRESS

(a) Evidence

At the suppression hearing, the State offered the testimony of Deputy Dennis Guthard of the Lancaster County Sheriff's Department. The record shows that on the evening of January 31, 2012, Guthard was monitoring traffic at the intersection of two gravel roads, Adams and 112th. Streets, in Lancaster County. After observing an eastbound pickup, which failed to stop at the stop sign at the intersection and did not use its turn signal before turning to go north, Guthard activated the overhead lights on his vehicle and initiated a traffic stop of the pickup. Guthard's vehicle was equipped with video and audio recording equipment, and a recording of the stop and Guthard's subsequent contact with the driver was received into evidence. Guthard made contact with the driver, whose driver's license identified him as Johnson. Johnson did not have vehicle registration or proof of insurance with him. Guthard was aware that these "were potentially jailable offenses," but he testified that he has never arrested anyone for failure to provide proof of insurance or vehicle registration.

Guthard described his initial observations of Johnson's demeanor. According to Guthard, Johnson was sweating, his forehead was wet, his hands were shaking, he was talkative, and he appeared nervous. Upon Guthard's inquiry, Johnson indicated that he was coming from "the Wal-Mart on 84th Street, north of Adams" and was driving to his girlfriend's house in Ashland. Guthard thought Johnson's response was "kind of strange" because Johnson did not appear to be traveling to Ashland by the most direct route. Guthard testified that "a very common way" to get to Ashland from that particular Wal-Mart would be to travel north on 84th Street to Highway 6, which are both paved roads, and then go east on Highway 6 to Ashland. Guthard questioned whether Johnson would have been able to reach Ashland via gravel roads from the location where Guthard stopped him. He agreed, however, that there is nothing illegal or inherently suspicious about driving on gravel roads.

Guthard inquired further about the reason for Johnson's route, and Johnson "rambled on a little bit and didn't really have a response." Johnson eventually responded that he "likes to take gravel roads." Based on Johnson's response and nervousness, Guthard was suspicious that "something [was] not right with this guy, this vehicle." He returned to his cruiser to check the

status of Johnson's driver's license and to run the license plate for Johnson's pickup on his mobile data terminal, both of which are part of the normal routine for investigating a traffic stop.

Guthard's check on Johnson revealed that he had numerous "intel cards," which Guthard described as information cards that law enforcement uses to document possible criminal activity, either by way of confidential informants or law enforcement contacts that yielded "suspicions" worth documenting but not enough probable cause to arrest. Such information is documented in information reports viewable by law enforcement so officers "know who [they] are contacting out there on the street." The information about Johnson concerned possible illegal drug activity and carrying weapons in his vehicle. There was nothing on the intel cards which indicated that Johnson was a violent person or would be violent towards law enforcement.

Guthard testified that after viewing the intel cards, he was suspicious of narcotic activity. He also indicated that Johnson's level of nervousness was beyond that normally displayed by people he contacted during a traffic stop. Based on the information in the intel cards, Guthard requested a canine unit, which was not available, after which he requested a traffic unit, and another deputy responded that he was on his way to Guthard's location. While waiting for the other deputy, Guthard began completing citations for Johnson. Guthard agreed that about 13 minutes elapsed from the time of the stop until he reapproached Johnson, which he did not feel was an unusual amount of time.

Once the other deputy arrived, Guthard returned to Johnson's pickup and asked him to step outside. Guthard stayed back from the driver's door for "officer safety reasons," and asked Johnson to come to him because of the information he learned through his mobile data terminal. Johnson was not under arrest at the point when Guthard asked him to get out of his pickup, and while interacting with Johnson, neither Guthard nor the other deputy drew a weapon.

As Johnson approached him, Guthard recognized clips for pocket knives in Johnson's right pocket with the clips visible from the outside and the "knife portion" inside the pocket. Guthard directed Johnson to keep his hands away from his pockets, but Johnson immediately moved his hands toward his right pocket. Both Guthard and the other deputy told Johnson to keep his hands away from his pockets, and Guthard asked Johnson if he could pat him down and retrieve the knives. Johnson said "no" and again appeared to be reaching for the knives. According to Guthard, Johnson still appeared to be very nervous and was shaking and sweating despite the cold outdoor temperature. Guthard did not know whether Johnson was reaching for the knives to hand them to him or to assault him. Guthard admitted that prior to Johnson's act of reaching for the knives in his pocket, he had not seen anything which made him feel unsafe.

Guthard then told Johnson to put his hands above his head and that he was going to pat him down for weapons. Guthard testified that the pat-down was for everyone's safety to make sure that Johnson did not have any other weapons. Guthard noted that while his research showed that Johnson had been known to carry guns, even knives "can be used to harm people." According to Guthard, he asked Johnson to step out of his pickup, rather than simply issuing citations for the traffic violations, because of Johnson's nervousness, his route of travel, and the information Guthard gathered from his computer as well as his training and experience. Guthard asked Johnson to turn away from him and place his hands above his head, but Johnson kept reaching for the knives and turned around at one point. After Johnson turned around, the other deputy grabbed him and

took the knives from Johnson's pocket. Guthard testified that if Johnson had not had the knives in his pocket and had complied with Guthard's instructions, Guthard would have issued the citations and let Johnson go.

Guthard then proceeded to do a pat-down for further weapons. Guthard testified that this was based on the "one plus rule" he had been trained in, which means if there is one weapon there is another. Guthard testified that in his experience, the rule often proves to be true.

During the pat-down, Guthard felt a bulge in Johnson's right front pocket, which he immediately knew was a narcotics pipe due to its shape. Guthard asked Johnson if it was a tobacco pipe. Johnson did not respond, but he retrieved the pipe from his pocket and handed it to Guthard at his request. According to Guthard, the pipe was clearly a methamphetamine pipe, and it had a burn mark on it and white powdery substances caked to the sides. Based on these observations, Guthard believed he had probable cause to conduct a further search of Johnson for other contraband or controlled substances. After a more thorough search of Johnson, Guthard found four clear baggies containing suspected methamphetamine.

Johnson offered testimony from his girlfriend at the suppression hearing. She testified she lives in Ithaca, Nebraska which is north and west of Ashland. She lives in the country and reaches her house by "country roads," using "a variety of routes." Johnson presented no other evidence.

(b) Argument

Johnson asserts that the district court erred in denying his motion to suppress. He argues, based on the amount of time that lapsed between the traffic stop and when Guthard asked him to exit his vehicle, that Guthard impermissibly expanded the scope of the stop into a drug investigation. He also argues that once he was outside his vehicle, Guthard's pat-down search of him was unjustified. We disagree.

A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Jasa*, 297 Neb. 822, 901 N.W.2d 315 (2017). There is no dispute that Guthard had probable cause to stop Johnson's vehicle.

Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011). This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. *Id.* Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are any outstanding warrants for any of its occupants. *Id.*

In ruling on Johnson's motion to suppress, the district court determined that Guthard's investigation was well within the scope of that permitted during routine traffic stops. We agree. Guthard asked for Johnson's license and registration, inquired about his travels, and asked him to wait in his vehicle while Guthard checked Johnson's information and for any warrants. The court also found that the interval between the initial stop and when Guthard returned to the vehicle was not an unreasonable delay and found no evidence of any lack of diligence by Guthard in the traffic investigation. On appeal, Johnson does not take issue with the specific amount of time that passed, but rather, he argues that by asking Johnson to step out of his vehicle after the passage of about 13

minutes, Guthard impermissibly expanded the traffic investigation into a drug investigation without reasonable suspicion.

In order to expand the scope of a traffic stop and continue to detain the motorist, a law enforcement officer must have a reasonable, articulable suspicion that a person in the vehicle is involved in criminal activity beyond that which justified the initial stop. See *State v. Nelson, supra*. Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017). Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances and must be determined on a case-by-case basis. *Id.*

Factors that would independently be consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively. *State v. Nelson, supra*. An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered. *State v. Khalil*, 25 Neb. App. 449, 908 N.W.2d 97 (2018). If reasonable suspicion exists for a continued detention, the court must consider whether the detention was reasonable in the context of an investigative stop, considering both the length of the continued detention and the investigative methods employed. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

A police officer may take reasonable steps to ensure his or her personal safety and maintain the status quo during an investigative stop. *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997). An officer who reasonably believes that a person is armed and dangerous is entitled for the protection of himself or herself and others to conduct a carefully limited search of the outer clothing of such person in order to discover weapons which may be used to assault him or her. *In re Interest of Andre W.*, 256 Neb. 362, 590 N.W.2d 827 (1999).

The district court found that the scope of the investigation was permissibly expanded once Johnson stepped from his pickup and the deputies observed what appeared to be two knives in his front pocket. The court determined that at that point, the deputies were justified in removing the weapons and conducting a pat-down search for additional weapons before continuing their investigation. The court concluded that Guthard's open-handed pat-down search of Johnson constituted a reasonable, non-intrusive search for weapons which did not violate Johnson's Fourth Amendment rights. The court's factual findings in this regard are not clearly erroneous, and we agree that Guthard's pat-down search did not violate Johnson's Fourth Amendment rights. Given the information found in the intel cards, Johnson's demeanor and failure to comply with Guthard's requests to keep his hands away from his pockets, and the presence of the pocket knives, a pat-down search of Johnson was a reasonable, nonintrusive step to ensure officer safety. Johnson's assertions to the contrary are without merit.

After addressing the reasonableness of the pat-down search, the district court proceeded to address the discovery of the pipe, Guthard's request to see the pipe, and Johnson's compliance with that request. The court determined that once Guthard saw the pipe, which based on his training and experience he recognized as a pipe used for smoking methamphetamine, Guthard had probable cause to believe that Johnson was in possession of contraband and was justified in conducting a more thorough search. Johnson does not challenge these findings on appeal, and we need not

address them further. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018).

We conclude that the district court court's findings of fact regarding the stop and detention of Johnson were not clearly erroneous, and we find no error in its denial of the motion to suppress.

## 2. MOTIONS TO DISCHARGE

Johnson asserts that the district court erred in denying both his December 2013 and May 2015 motions for discharge on constitutional speedy trial grounds and quashing all subpoenas. He first argues that on remand following his first appeal, the court did not properly comply with this court's mandate, which Johnson argues required the court to hold a further evidentiary hearing. Second, he also argues that even if the court did not err in failing to hold a further hearing, the court erred in its analysis of the factors relevant to a determination of whether a defendant's constitutional right to a speedy trial has been violated.

### (a) Compliance With Mandate

In appellate procedure, a "remand" is an appellate court's order returning a proceeding to the court from which the appeal originated for further action in accordance with the remanding order. *Molina v. Salgado-Bustamante*, 21 Neb. App. 75, 837 N.W.2d 553 (2013). After receiving a mandate, a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court. *Merie B. on behalf of Brayden O. v. State*, 295 Neb. 933, 890 N.W.2d 513 (2017). When a cause is remanded with specific directions, the court to which the mandate is directed has no power to do anything but to obey the mandate. *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005).

In Johnson's first appeal, this court determined that Johnson properly raised his claim asserting a violation of his constitutional right to speedy trial, and because the district court failed to address the issue and make appropriate findings concerning the relevant factors, we found it necessary to remand for further consideration and findings. See *State v. Johnson I, supra*. We observed that the order denying the first motion for discharge did not include mention of the constitutional right or any consideration of the factors of the four-part balancing test for determining whether the constitutional right to a speedy trial has been violated articulated by the U.S. Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), and we remanded for the court to make appropriate findings concerning the factors of the balancing test. We did not direct the court to hold a further evidentiary hearing, nor was such a hearing necessary. Johnson raised the issue of his constitutional speedy trial rights in his first motion to discharge, and he had the opportunity to present evidence or argument addressing that issue at the time of the hearing on his first motion. On remand, the court complied with our directions for further consideration and applied the factors of the balancing test. The court made the necessary findings and concluded that Johnson's constitutional right to a speedy trial had not been violated. Accordingly, the court denied Johnson's first motion for discharge in that regard and placed the case on the list of cases to be tried during the court's next jury term. Johnson's argument that the court failed to comply with this court's mandate is without merit.

(b) Second Motion to Discharge

Subsequently, Johnson filed his second motion to discharge. The second motion to discharge included a new assertion that the reason for the delay in ruling on his motion to suppress was that the district court judge forgot to rule on the motion. On October 22, 2015, the district court entered an order finding that the order on remand complied with this court's mandate and that the doctrine of issue preclusion applied to bar relitigation based on "an alternative theory of why the original delay for ruling on [Johnson's] Motion to Suppress occurred." Accordingly, the court dismissed Johnson's second motion to discharge, cancelled the hearing scheduled on his motion, and quashed all subpoenas.

On appeal, Johnson argues that the district court's October 22, 2015, order "reflects a misunderstanding of the issue." Brief for appellant at 40. He states that his second motion for discharge was not filed because he had developed an "alternative theory as to the reason for the delay," stating further that it is "not even clear what the district court meant by this." *Id.* Then he describes the second motion as "less a 'new' motion for discharge than it was a motion requesting that the court reconsider and actually comply with the appellate mandate." *Id.*

Contrary to Johnson's characterization, the second motion for discharge did not include a request to comply with this court's mandate or ask for reconsideration of the district court's order on remand. It was filed on May 28, 2015, more than a month after entry of the April 17 order on remand, and was thus not timely as a motion to alter or amend. See Neb. Rev. Stat. § 25-1329 (Reissue 2016) (motion to alter or amend judgment shall be filed no later than 10 days after entry of judgment); *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017) (motion for reconsideration is functional equivalent of motion to alter or amend judgment).

Johnson also argues that the district court's determination that he is barred by the doctrine of issue preclusion from bringing his second motion for discharge "is untenable." Brief for appellant at 40. Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate. *McGill v. Lion Place Condo. Assn.*, 291 Neb. 70, 864 N.W.2d 642 (2015). Johnson argues that the court was more accurately referring to the law-of-the-case doctrine. The law-of-the-case doctrine operates to preclude a reconsideration of substantially similar, if not identical, issues at successive stages of the same suit or prosecution. *State v. Lavalleur*, 298 Neb. 237, 903 N.W.2d 464 (2017). The law-of-the-case doctrine promotes judicial efficiency and protects the parties' settled expectations by preventing parties from relitigating settled issues within a single action. *County of Sarpy v. City of Gretna*, 276 Neb. 520, 755 N.W.2d 376 (2008).

Regardless of how the district court labeled the issue in its October 22, 2015, order, the court correctly determined that the issue of whether Johnson's constitutional right to a speedy trial had been violated had already been litigated and thus, Johnson was precluded from relitigating the issue via his second motion for discharge. Johnson argues that the constitutional speedy trial issue had not been decided because in the court's order on remand, it declined to make specific findings as to the reason for the delay in ruling on his motion to suppress. Contrary to Johnson's assertion, the court did make findings addressing all four factors of the balancing test for determining whether the constitutional right to a speedy trial has been violated. We address those findings more

specifically below. Because the issue of whether Johnson's constitutional right to a speedy trial had already been litigated and decided, Johnson was precluded from relitigating the issue in his second motion for discharge. And, as discussed above, Johnson's second motion was not a motion to alter or amend.

Before turning to a consideration of the court's application of the constitutional speedy trial factors in the order on remand, we note Johnson's argument that, while it was unnecessary for the court to quash the subpoenas given its dismissal of his second motion to discharge and cancellation of the hearing on that motion, "a discussion of this topic is important." Brief for appellant at 41. He then proceeds to present argument on the issue of when a judge may be called to testify. We need not address Johnson's arguments regarding quashing of the subpoena as they are unnecessary to our resolution of this appeal, given our determination that the order on remand complied with this court's mandate and the district court correctly overruled Johnson's second motion for discharge. See *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018) (appellate court not obligated to engage in analysis not necessary to adjudicate case and controversy before it).

(c) Constitutional Speedy Trial Factors

The constitutional right to a speedy trial is guaranteed by U.S. Const. amend. VI and Neb. Const. art. I, § 11. *State v. Hettle*, 288 Neb. 288, 848 N.W.2d 582 (2014). The constitutional right to a speedy trial and the statutory implementation of that right exist independently of each other. *Id.* Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which the courts must approach each case on an ad hoc basis. *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017). This balancing test involves four factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *Id.* On appeal, Johnson does not address the district court's analysis of each individual factor of the balancing test, arguing only the fact that the court took from March 20, the date of the suppression hearing, to December 2 to rule on his motion to suppress was, "on its own, sufficient to warrant the granting of his motion for absolute discharge on constitutional grounds." Brief for appellant at 42. Contrary to Johnson's assertion, none of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016). Rather, the factors are related and must be considered together with other circumstances as may be relevant. *Id.*

The first factor, serving as a triggering mechanism, is the length of delay. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance when determining whether constitutional speedy trial rights have been violated. *State v. Betancourt-Garcia, supra.* The district court noted that the only delay complained of by Johnson was the period of time during which his motion to suppress was actively under advisement by the court, from April 18, 2013 (the point at which his brief was submitted following the March 20 hearing and the parties declined additional briefing), to December 2, 2013 (the date on which court entered the order denying Johnson's motion to suppress). The court found nothing in the record to suggest the 7½-month delay was presumptively prejudicial; however, the court stated that this court's remand of the case suggested that this court "at least considered the delay worthy of further constitutional analysis." Accordingly, the court concluded that the length

of delay during which Johnson's motion to suppress "was actively under advisement" was sufficient to trigger inquiry into the other factors under the balancing test.

Johnson's motion was under advisement from the time of the hearing in March until the court ruled on the motion in December. We previously determined that his statutory speedy trial right under Neb. Rev. Stat. § 29-1207 (Reissue 2016) was not violated. Section 29-1207 provides a useful standard for assessing whether the length of a trial delay is unreasonable under the U.S. and Nebraska Constitutions. *State v. Hettle*, 288 Neb. 288, 848 N.W.2d 582 (2014). The period that Johnson's motion to suppress was under advisement was attributable to him for purposes of the statutory speedy trial calculation. See *State v. Lafler*, 225 Neb. 362, 405 N.W.2d 576 (1987), *abrogated on other grounds, State v. Oldfield*, 236 Neb. 433, 461 N.W.2d 554 (1990) (no showing of reasonableness or good cause necessary to exclude delay where excludable period falls under § 29-1207(4)(a) rather than catchall provision of § 29-1207(4)(f)). It is an unusual case in which the Sixth Amendment has been violated when the time limits under the speedy trial act have been met. *State v. Hettle, supra*. We agree with the district court that the period at issue is not presumptively prejudicial, but that, under the circumstances of this case, inquiry into the other three factors was warranted. Although Johnson does not argue that the court erred in its analysis of the remaining three factors, we address them briefly for the sake of completeness.

The second factor, the reason for delay, requires us to evaluate "whether the government or the criminal defendant is more to blame." *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). The primary burden to ensure that cases are brought to trial lies with the courts and the prosecutors. *State v. Schmader*, 13 Neb. App. 321, 691 N.W.2d 559 (2005). In addressing this factor, the district court noted that neither party had asked the court to explain or justify the length of time the motion to suppress was under advisement and also noted the prohibition against a judge assuming the role of a witness. The court observed that neither party had offered any evidence on the reasonableness for the delay or had asked for another judge to preside over the matter on remand. The court stated that it was left with little more than this court's observation in *State v. Johnson I* that "there is nothing to suggest any kind of judicial neglect comparable to that in *State v. Wilcox*, [224 Neb. 138, 395 N.W.2d 772 (1986)]." 22 Neb. App. at 754, 860 N.W.2d at 228. The district court stated, "While certainly far from a glowing endorsement, this court nevertheless concludes on the evidence presented that the complained-of delay was attributable to the filing of [Johnson's] Motion to Suppress and the necessary resolution thereof, and the time for resolution was neither inordinate nor unreasonable under the circumstances." The court concluded that consideration of this factor did not weigh in favor of a conclusion that Johnson's constitutional speedy trial rights had been violated. The court's findings in this regard are not clearly erroneous, and Johnson does not argue otherwise.

The third factor addresses "whether in due course the defendant asserted his right to a speedy trial." *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016). The final factor considers whether the defendant suffered any prejudice from the delay. See *id*. The district court found that consideration of both of these factors weighed against a conclusion that Johnson's constitutional right to a speedy trial had been violated. The court's findings in this regard are not clearly erroneous.

After weighing the totality of the circumstances and the four factors of the balancing test, we conclude that Johnson's right to a speedy trial under U.S. Const. amend. VI and Neb. Const. art. I, § 11, was not violated. The district court did not err in denying his motion for discharge in this regard.

## VI. CONCLUSION

The district court did not err in denying Johnson's motion to suppress or his motions to discharge on constitutional speedy trial grounds.

AFFIRMED.