Filed 2/7/14  P. v. Jaramillo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056689 |
| v. | (Super.Ct.No. FSB1105820) |
| CHRISTOPHER JARAMILLO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  Affirmed.

Sarita Ordonez, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Julianne Karr Reizen, and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant Christopher Jaramillo was detained by police while driving with his nine-year-old nephew as a passenger. After searching defendant and his car, the police found heroin and drug paraphernalia.

A jury convicted defendant of possession of a controlled substance for sale. (Health & Saf. Code, § 11351.) Defendant admitted having a 1997 conviction for first degree residential burglary. (Pen. Code, §§ 1170.12, subds. (a) through (d), and 667, subds. (b) through (i).)[1] The court denied the defense motion to strike the prior conviction pursuant to section 1385. The court sentenced defendant to a total determinate sentence of six years.

On appeal, defendant argues the court erred in denying his motion to suppress and in allowing evidence about two other people. Defendant also contends the trial court abused its discretion in denying his *Romero*[2] motion to strike his prior conviction. We reject defendant's appeal and affirm the judgment.

II

STATEMENT OF FACTS

On the morning of December 28, 2011, a police detective, Scott Roebuck, was parked in an unmarked car at a Smart and Final store. He noticed some people huddled

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

together in the parking lot. Roebuck knew two people from previous arrests as heroin users. Roebuck testified that "they were waiting for a heroin connection. [¶] . . . [¶] . . . Just the fact that they were known heroin addicts grouped up in an area known for heroin. . . . I've seen this scenario played out hundreds of times throughout my career. I mean, I -- I just know that that's what they were waiting for." When a patrol car drove through the parking lot, the group reacted nervously and one person walked away. Detective Roebuck contacted the patrol car to report he was observing some people who seemed to be waiting for a heroin connection. If it happened, he would radio with a description of the car and its direction of travel.

About 30 minutes later, defendant arrived, driving a silver Camry. Defendant got out of his car and had some interactions with the people in the parking lot before returning to his car and leaving. Detective Roebuck recognized one of the people in the group as a "known drug seller." Detective Roebuck radioed the patrol car about the direction defendant was driving.

Officer Anna Stewart and her partner, Jason Stack, were contacted by Detective Roebuck, who reported he believed an unknown Hispanic male was selling narcotics and driving a silver Toyota Camry in the area. The Hispanic male had exited an alleyway and was "driving erratically." Officer Stewart saw a vehicle travelling at an unsafe speed and exiting an alley without stopping so she made a traffic stop. Defendant's nephew was in the car.

Officer Stack searched defendant and found a syringe, wrapped inside dollar bills, in defendant's front pocket. Officer Stack searched defendant's car and found the bottom

3

of an aluminum can with burnt residue, as well as cellophane and plastic wrapping smelling like vinegar.  Heroin smells like vinegar and is often packaged in cellophane or plastic.  Officer Stack questioned defendant's nephew, who stated he saw defendant reach into his pocket several times while in the Smart and Final parking lot.

Officer Stack arrested defendant and read him his *Miranda*[3] rights.  Defendant told Officer Stack he had used heroin the night before.  He used narcotics because he had lost his job and his wife.  He was looking for work and having a hard time making money.

Later, the police searched defendant again and found three $10 bindles of heroin— each one the size of a pencil eraser.  Officer Stack admitted that it was not a large amount of heroin and he did not find any scales, cell phones, or "pay-owe sheets" on defendant's person or in his car.

Detective Roebuck testified that defendant possessed the heroin for sale.  He based his opinion on his observations of the group in the parking lot, defendant's conduct, and that the heroin was packaged for sale.

III

MOTION TO SUPPRESS

Defendant contends the trial court committed reversible error by denying his motion to suppress evidence.  As we discuss below, the officers had a reasonable

---

[3]  *Miranda v. Arizona* (1966) 384 U.S. 436.

4

suspicion based on articulable facts to conduct a patdown search, followed by a more thorough search of defendant and his car after his arrest.

*The Suppression Hearing*

At the suppression hearing in May 2012, Detective Roebuck testified about his 19 years of experience as a police officer, involved in narcotics investigations since 1995. As an undercover officer, he had purchased and sold narcotics. He had investigated thousands of hand-to-hand narcotics sales transactions and had interviewed many individuals who sold street-level narcotics. He testified about street-level sales and delivery.

On the morning of December 28, 2011, while on duty, the detective observed a hand-to-hand drug sale in the Smart and Final parking lot. The detective first saw a group congregating in the parking lot and recognized several people as heroin users. The detective radioed a patrol vehicle and asked the officers to stand by until a drug seller arrived and delivered drugs to the group. Defendant drove up, parked, and met with each individual. Defendant's physical movements were consistent with hand-to-hand drug transactions, like hundreds of similar transactions Detective Roebuck had observed. When defendant drove away, the detective radioed to the nearby officers the description and the direction of travel of the vehicle and a description of defendant.

Officer Stewart testified she spotted the silver Toyota Camry and observed it turn from an alley into the road at an unsafe speed, causing another vehicle to swerve to avoid a collision. When the police stopped him, defendant was very nervous and sweating. Defendant was not free to leave at that point. Defendant admitted he was on probation.

5

Officer Stack confirmed that he and Officer Stewart mutually decided to stop defendant's vehicle because it had failed to come to a complete stop and made an unsafe turn into traffic. He conducted a weapons and narcotics search—a patdown over defendant's clothing—and felt "a paper like object with a longer fixed object" inside defendant's front right pocket. He was concerned the object could be dangerous. He removed the syringe wrapped in currency from defendant's pocket. Possession of a syringe is a violation of Business and Professions Code section 4140. Officer Stack searched defendant's vehicle and found other narcotics-related items. The police arrested defendant for child endangerment because defendant's nephew was in the car. (§ 273, subd. (a).)

At the conclusion of the hearing, the trial court found Detective Roebuck was a drug expert. The trial court held the police officers had a "reasonable suspicion to find that a moving traffic violation had occurred and based upon the expertise of the detective in question that there was reason to believe criminal activity may have taken place prior to the defendant driving away from that location." The court ultimately found that defendant was properly ordered out of his vehicle based on *Pennsylvania v. Mimms* (1977) 434 U.S. 106. The court found the subsequent patdown was "reasonable under the circumstances of the information that was given to the officers from the detective . . . ." The discovery of the syringe during the patdown was reasonable in connection with the misdemeanor arrest. The court denied the motion to suppress, ruling: "[B]ased upon the totality of the evidence including the testimony from the detective at the time the

6

defendant was ordered out of the vehicle, the Court is going to find that that was lawful under Mimms and the Fourth Amendment, . . ."

*Standard of Review*

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. (*People v. Ayala* (2000) 24 Cal.4th 243, 279.) We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. (*Ibid.*) The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. (*Ibid.*)" (*People v. Hoyos* (2007) 41 Cal.4th 872, 891, abrogated by *People v. McKinnon* (2011) 52 Cal.4th 610; *People v. Jenkins* (2000) 22 Cal.4th 900, 969.)

*Reasonable Suspicion to Conduct The Searches*

We reject defendant's argument the patdown search was unlawful because there was no evidence defendant possessed any weapons. An officer making a traffic stop may order the driver to exit the car without violating the Fourth Amendment. (*People v. Hoyos, supra,* 41 Cal.4th at pp. 892-893.) Defendant had violated several traffic laws before being stopped, authorizing the police to order defendant out of his car. Furthermore, when an officer reasonably believes—based upon his experience and the circumstances—that a suspect may be armed and dangerous, the officer is entitled to take reasonable measures to determine whether the person is in fact carrying a weapon and to neutralize that threat. (*Terry v. Ohio* (1968) 392 U.S. 1, 24, 27, 29.)

7

Minor traffic offenses alone do not reasonably suggest the presence of weapons. (*People v. Miranda* (1993) 17 Cal.App.4th 917, 927.) However, California courts recognize that narcotics sales are a serious offense and that narcotics dealers are frequently armed. (*People v. Ortiz* (1995) 32 Cal.App.4th 286, 294.) As one appellate court colorfully commented: "Illegal drugs and guns are a lot like sharks and remoras. And just as a diver who spots a remora is well-advised to be on the lookout for sharks, an officer investigating cocaine and marijuana sales would be foolish not to worry about weapons." (*People v. Simpson* (1998) 65 Cal.App.4th 854, 862.)

In *People v. Collier* (2008) 166 Cal.App.4th 1374, the appellate court held an officer properly asked the passenger and driver to exit a car after a traffic stop to conduct a search of the car's interior due to the strong smell of marijuana. The passenger wore baggy clothing that might be used to conceal a weapon. The officer conducted a limited patdown of the passenger based on concerns about officer safety and the presence of drugs, even though there were no furtive gestures and no gang evidence, and the traffic stop was not in a high crime area. (*Id.* at pp. 1377-1378.) The *Collier* court commented: "The Fourth Amendment has never been interpreted to '"require that police officers take unnecessary risks in the performance of their duties." [Citation.]'" (*Id.* at p. 1378.)

In this case, the combined circumstances demonstrated a reasonable and articulable suspicion justifying the patdown search. The evidence supports a reasonable belief that defendant was engaged in narcotics sales and might have a weapon. Detective Roebuck had observed defendant engage in hand-to-hand transactions with people known to be heroin users, congregating in an area known for heroin trafficking. The detective

8

had substantial experience in illegal narcotic transactions. The evidence supports a reasonable belief that defendant was engaged in criminal activity and might have a weapon. Officer Stack's knowledge of the recent suspected narcotics sales, combined with the traffic violations and defendant's nervous behavior and sweaty demeanor, justified a patdown search after defendant was ordered out of the vehicle.

Certainly, once Officer Stack felt the syringe in defendant's pocket he could continue the search for possible weapons. (*People v. Thurman* (1989) 209 Cal.App.3d 817, 825-826; *People v. Limon* (1993) 17 Cal.App.4th 524, 535.) The officer's search of the vehicle was justified by the discovery of the syringe in defendant's pocket. (*People v. Nottoli* (2011) 199 Cal.App.4th 531, 557-558.) The evidence supported a reasonable belief based on specific and articulable facts that defendant was engaged in criminal behavior and might be armed and dangerous.

Furthermore, the search of defendant's person and car was a lawful search incident to arrest. (*People v. Diaz* (2011) 51 Cal.4th 84, 90.) A search incident to arrest can lawfully precede the arrest. (*People v. Cockrell* (1965) 63 Cal.2d 659, 666; *People v. Gonzales* (1989) 216 Cal.App.3d 1185, 1189.) Even a minor criminal offense, punishable only by a fine, can support a custodial arrest and, thus, a search incident to arrest. (*People v. McKay* (2002) 27 Cal.4th 601, 605, 618; *People v. Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 812-813.)

Defendant contends that, because the trial court ultimately found there was no probable cause to arrest defendant for child endangerment, the subsequent search was invalid. However, an officer may always thoroughly search a person incident to arrest

9

when the person is taken into lawful custody, regardless of the offense for which the arrest is made. When objective probable cause exists to arrest a suspect for an offense, the arrest is reasonable under the Fourth Amendment—even when the officer makes the arrest for a different offense unsupported by probable cause. (*People v. Rodriguez* (1997) 53 Cal.App.4th 1250, 1262-1267; *In re Donald L.* (1978) 81 Cal.App.3d 770, 775.)

Here, defendant was initially detained due to the traffic violations as well as the suspected narcotics sales. The record shows probable cause existed to arrest defendant for possession of the syringe, discovered during the initial patdown. (Bus. & Prof. Code, § 4140.) At that point, Officer Stack placed defendant in handcuffs and proceeded to search defendant more thoroughly. Defendant's argument, that the court found the officer lacked probable cause to arrest on the grounds of child endangerment, does not undermine the validity of a more thorough search. Therefore, the officer properly conducted a subsequent search incident to arrest and the trial court properly denied defendant's suppression motion.

Defendant also challenges the search of his vehicle, relying on *Arizona v. Gant* (2009) 556 U.S. 332. In *Gant*, the defendant was arrested for driving on a suspended license, handcuffed, and locked in a patrol car before officers searched his car and found cocaine in a jacket pocket. (*Ibid.*) The Supreme Court found the search was not reasonable. (*Id.* at p. 333.) The *Gant* court held that law enforcement may search a vehicle incident to an occupant's arrest in two circumstances: (1) when the arrestee is unsecured and has access to the passenger compartment or (2) when evidence relevant to

10

the crime might reasonably be found in the vehicle. (*Id.* at p. 343; *People v. Osborne* (2009) 175 Cal.App.4th 1052, 1065.)

Here the police had probable cause to arrest defendant for possession of a syringe and it was reasonable that additional drug paraphernalia or narcotics could be found in the vehicle. Just moments before the stop, Detective Roebuck had observed defendant sell drugs to some known heroin users in an area known for heroin trafficking. The detective's observations, combined with the syringe, provided an objectively reasonable belief that additional drug paraphernalia or narcotics or both might be in the vehicle. Accordingly, the search was justified as incident to the arrest of defendant.

Furthermore, the "automobile exception" to the Fourth Amendment justifies a vehicle search if there is probable cause to believe the vehicle contains evidence of criminal activity. (*Arizona v. Gant, supra,* 556 U.S. at p. 347.) "Under the automobile exception, police who have probable cause to believe a lawfully stopped vehicle contains evidence of criminal activity or contraband may conduct a warrantless search of any area of the vehicle in which the evidence might be found." (*People v. Evans* (2011) 200 Cal.App.4th 735, 753.) Here, Detective Roebuck's observations, defendant's illegal possession of a syringe wrapped in cash, and defendant's nervous, sweaty behavior, established probable cause for the officers to believe incriminating drug evidence would be found in the car.

11

IV

RIGHT TO CONFRONTATION AND A FAIR TRIAL

Defendant protests that his right to confrontation and a fair trial were violated by Detective Roebuck's testimony that the people in the parking lot were drug users and the stipulation that two of them—Ricardo Williams and Teresa Osuna—had extensive drug-related criminal records. The parties agreed to stipulate to the prior criminal convictions of Williams and Osuna. At a pretrial hearing, the trial court found such evidence was relevant as to whether defendant possessed the heroin for personal use or sale.

The Sixth Amendment's Confrontation Clause bars admission of "testimonial" hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. (*Crawford v. Washington* (2004) 541 U.S. 36, 42, 53-54, 68.) The confrontation clause does not apply to nontestimonial statements. (*Davis v. Washington* (2006) 547 U.S. 813, 823-824].) "If the statement is not testimonial, it does not implicate the confrontation clause, and the issue is simply whether the statement is admissible under state law as an exception to the hearsay rule. [¶] Testimonial statements are 'statements, made with some formality, which, *viewed objectively*, are for the *primary purpose* of establishing and proving facts for possible use in a criminal trial.' [Citation.]" (*People v. Garcia* (2008) 168 Cal.App.4th 261, 291.) Neither the detective's testimony as a percipient witness nor the admission of Williams and Osuna's criminal records implicated defendant' rights under the confrontation clause.

First, we observed defendant waived the issue by failing to object in the trial court and, instead, stipulating to the admission of the records. (*People v. Alvarez* (1996) 14

12

Cal.4th 155, 186)  The only defense objection made was to Detective Roebuck "testifying to speculation regarding 'known drug users' at the incident location."  Defendant did not make a specific or timely objection based on the Sixth Amendment's confrontation clause either to the admission of the testimony of the detective regarding his knowledge of Williams and Osuna or to the admission of Williams and Osuna's convictions.  An objection to evidence is required to be timely made "because it 'allows the court to remedy the situation before any prejudice accrues.' [Citation.]" (*People v. Boyette* (2002) 29 Cal.4th 381, 424.)  Further, "'[s]pecificity is required both to enable the court to make an informed ruling on the motion or objection and to enable the party proffering the evidence to cure the defect in the evidence.'" (*Ibid.*)  Accordingly, defendant failed to preserve his confrontation challenge on appeal.

In any event, the record shows the detective's testimony was based on his own familiarity with Williams and Osuna because of prior criminal contacts.  On cross-examination, Detective Roebuck reiterated he knew them as drug users and sellers.  An objective review of the record demonstrates defendant had the opportunity to confront and cross-examine Detective Roebuck without restriction.  No authority required the prosecution to call Williams and Osuna to substantiate the detective's testimony.  Detective Roebuck, as a percipient witness to defendant's criminal activities, properly testified as to his observations.  Detective Roebuck's personal knowledge was not inadmissible hearsay and did not violate defendant's right to confrontation.

Furthermore, as a general rule criminal records do not violate the confrontation clause of the Sixth Amendment.  California courts have consistently held that records of

13

prior convictions are nontestimonial and therefore are outside the scope of the confrontation clause of the Sixth Amendment. (*People v. Moreno* (2011) 192 Cal.App.4th 692, 710-711; *People v. Morris* (2008) 166 Cal.App.4th 363; *People v. Taulton* (2005) 129 Cal.App.4th 1218, 1221.) The *Taulton* court, at page 1225, reasoned: "Although they may ultimately be used in criminal proceedings, as the documents were here, they are not prepared for the purpose of providing evidence in criminal trials or for determining whether criminal charges should issue. Therefore, these records are beyond the scope of *Crawford*, and the court properly admitted them and considered them for the statutory purposes."

Regardless of whether they were defendant's criminal records or another person's criminal record, the courts have consistently held criminal records are nontestimonial in nature because they are not compiled for the purpose of trial. Defendant does not show that the criminal records of Williams and Osuna were "'crafted in anticipation of being used in future court proceedings,'" or that the primary or sole purpose of the documents was to provide evidence in a subsequent prosecution. (*People v. Moreno, supra*, 192 Cal.App.4th at p. 710.)

Not only was no defense objection raised regarding these records but the parties stipulated to admit the records. Even if the parties had not stipulated, in light of Detective Roebuck's testimony about Williams and Osuna in the parking lot, certified criminal records reflecting their convictions would have been admissible at trial. In *People v. Morris, supra*, 166 Cal.App.4th at page 367, 370-371, the court cited *Taulton* and noted that a certified rap sheet is admissible under the public records exception to the

14

hearsay rule pursuant to Evidence Code section 1280. Thus, defendant fails to show that the admission of Williams and Osuna's drug-related criminal records violated his constitutional right to confront witnesses.

Finally, any error was clearly harmless beyond a reasonable doubt. (*People v. Loy* (2011) 52 Cal.4th 46, 69-70.) Apart from the evidence that defendant was associating with two "known drug users," substantial evidence allowed a jury reasonably to conclude that defendant possessed heroin for sale. The testimony of Detective Roebuck that he witnessed drug sales and the drug-related evidence found in the search of defendant's car makes it clear beyond a reasonable doubt that a jury would have reached the same verdict without the purported error. Accordingly, any error concerning Williams and Osuna and their records was harmless.

V

DISMISSAL OF PRIOR STRIKE CONVICTION ALLEGATION

As the final issue on appeal, we conclude the trial court did not err by refusing to dismiss defendant's prior strike.

At sentencing, the trial court reviewed all the pertinent materials and announced an intended sentence of three years, doubled to six years. Defense counsel argued that the prior strike conviction for first degree burglary occurred 15 years earlier and that defendant's only other criminal conviction was for a violation of section 242 in 2010. Defendant was a certified machinist from 1997 to 2010. Defendant began using and selling heroin only after he separated from his wife in 2011. Defense counsel argued defendant was not a recidivist but a productive member of society.

15

The prosecutor referred to the egregious facts of the 1997 conviction and that defendant had violated parole after he was released from prison for the strike offense, and returned to prison in 1998.

The court described how the residential burglary had involved a woman and child. Defendant had also spray-painted racial slurs on the victim's home and insulted the victim and her family while resisting arrest. The seriousness of the present crime was "elevated by the fact that [defendant] chose to take his 9-year-old nephew" with him when he sold the drugs and exposed him to danger. The court also considered the fact that defendant committed the present offense while on summary probation and that he continued to deny any culpability or responsibility. In consideration of all of the factors and balancing the current offense with the prior offense, the court decided it would be an abuse of discretion to grant a dismissal of the prior strike conviction allegation.

We agree the trial court did not clearly abuse its broad discretion to dismiss a prior conviction allegation. (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) It is the burden of the party challenging the sentence to show clearly that the sentencing decision was irrational or arbitrary. (*Id.* at p. 376.) "It is not enough to show that reasonable people might disagree about whether to strike one or more of [the] prior convictions." (*People v. Myers* (1999) 69 Cal.App.4th 305, 309-310.) When the trial court considered relevant factors and acted to achieve legitimate sentencing objectives, the decision will not be disturbed on appeal. (*Id.* at p. 310; *Carmony,* at p. 377.) So long as "'the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law,'" the trial court's ruling shall be

16

affirmed even if the reviewing court might have ruled differently in the first instance. (*Id.* at p. 378.)

The Three Strikes law establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike. (*People v. Carmony, supra*, 33 Cal.4th at p. 377.) Exceptions can only be made where a defendant should be treated as though he actually fell outside the Three Strikes scheme. (*Ibid.*) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Defendant contends the trial court improperly considered that defendant used his nephew as a "shield" during the drug sales. Defendant also argues that he was only 20 years old at the time of the prior conviction; he had only one more conviction in 2010; he had education and employment; he suffered from heroin addiction and depression; and the amount of drugs was small.

Notwithstanding these factors, defendant fails to meet his burden to show the trial court's decision was irrational or arbitrary. The court quite reasonably considered

17

defendant's conduct in exposing his nephew to danger. The court's comment that defendant used his nephew as a "shield" was not made until after defendant's *Romero* motion was denied when the court was imposing sentence and responding to defense counsel's argument about whether factors like planning and sophistication justified a mitigated term.

Here, the record reflects that the trial court carefully reviewed defendant's record and the nature of the current offense and acted to achieve legitimate sentencing objectives, after a thoughtful and thorough assessment of all relevant factors. (See *People v. Williams, supra*, 17 Cal.4th at p. 158.) The factors argued by defendant did not justify finding he fell outside the spirit of the Three Strikes law. Defendant has not demonstrated the trial court's imposed sentence was irrational or arbitrary. The trial court properly imposed the sentence that the Three Strikes law mandates.

VI

DISPOSITION

The trial court did not commit prejudicial error or abuse its discretion.

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.

18